(No. 25541.— )

EDWARD S. JACOBS *et al.* Appellants, *vs.* GEORGIANNA WILKERSON, Appellee.

*Opinion filed April 17, 1940.*

CONGER & ELLIOTT, for appellants.

KERN, PEARCE & PEARCE, and GEORGE W. HOGAN, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs, Edward S. Jacobs and Ida M., his wife, sought by their complaint in the circuit court of White county to set aside a certain oil and gas lease executed between them and defendant. The ground on which cancellation was sought was failure to comply with the terms of the lease as to payment of delay rentals in case of failure to drill within the specified time. Plaintiff Joe B. Williams is in the case because he has a second lease, executed by the Jacobses, and was permitted to intervene and join in the complaint.

The defendant, appellee, denied that there had been any failure to pay delay rentals but said in her answer that because of a mistake in the drawing of the lease it does not show the true contract of the parties as to the amount of rental to be paid, and she prays, as affirmative relief, that the lease be reformed to show the actual intent of the parties, and that, as reformed, it be declared valid. She also filed a counterclaim asking damages because of slander of title by bringing this proceeding, but as no evidence was offered on such charge and no such damages were awarded, that question is out of the case.

It seems that on October 7, 1937, or just prior thereto, defendant, who had for some time been in the business of securing oil leases, came to the residence of plaintiffs seeking to lease their land, consisting of a farm of 291 acres, for oil and gas; that upon inquiry as to what she was paying, she said "fifty cents per acre." That being satisfactory to Jacobs and his wife, an agreement to lease was entered into. Defendant procured a copy of an approved Illinois form of oil lease, and it was filled out and executed before a notary public as of October 7, 1937, and was afterwards recorded.

A printed form was used which, so far as the question of delay rentals is concerned, was, originally, as follows:

"If no well be commenced on or before twelve months from date hereof, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor ............, which shall operate as a rental to cover the privilege of deferring the commencement of a well for twelve months from said date." By filling in the blank with the amount and place of payment of delay rentals, and by changing the last word "twelve" to "three" in the printed form, the lease read when signed, as follows: "If no well is commenced on the land on or before twelve months from the date hereof, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the New Harmony National Bank at New Harmony, Indiana, or its successors, which shall continue as a depository regardless of change in the ownership of said land, the sum of fifty cents per acre which shall operate as a rental and cover the privilege of deferring the commencement of a well for three months from said date," etc.

The question arising on defendant's claim of mutual mistake is whether the language "the sum of fifty cents per acre" was intended to mean fifty cents per year per acre, or for merely a period of three months. If the former was the understanding of the parties, the amount payable during the year would be $145.50, and if the latter, it would amount to four times that, or $582. It is not denied that the change in the payment from one payment for the year period into quarterly payments was at the request of Jacobs. When the year was up, defendant came to the home of plaintiffs and presented a check for one-fourth of $145.50, which would be $36.37. The Jacobses accepted the check and both signed the receipt. It was claimed by Jacobs on the witness stand that he did not have his glasses and did not read the check, although this is positively denied by defendant.

The next day after receiving the check and receipting for the amount, Jacobs visited the office of his lawyer and

thereupon returned the check to the defendant with a letter saying, "In checking over my copy of the lease, I find this payment should be $145.50 every three months." It is not contended that the tender of one-fourth of $145.50 was not made regularly at the times specified, but plaintiffs say that because the oil lease calls for fifty cents per acre every three months, they were entitled, under the lease, to such payments, and a refusal on the part of defendant to make them voids the lease.

The chancellor, on hearing all the evidence and having before him the parties and witnesses, found that the contract actually made was for fifty cents per acre per year, and that in making the change in the lease so as to provide for payments quarterly, an error was made in setting out the true contract of the parties as to the amount. A decree was entered reforming the lease and declaring it to be a valid lease, as reformed. Defendant was given thirty days to make the due payments. Plaintiffs have appealed from this decree.

We approach the review of this case with the rule in mind that the chancellor, having heard the testimony and had the witnesses before him, so that he might observe their demeanor, fairness and candor, is in a better position than this court to determine the weight of their testimony.

Defendant, in her claim that this was a mistake of fact, is corroborated by two witnesses, one of whom was present at the time the lease was entered into, and the other at the time the first payment was made. In addition, Jacobs, on cross-examination, did not deny a conversation, as taking place between him and defendant concerning the true contract of lease, in which conversation she had said to him, in effect, that he knew the contract was for fifty cents per acre per year, and he replied that he did, but that the lease called for fifty cents per acre every three months and that he was going to have that amount. Upon reading the testimony as abstracted, we are convinced that the chancellor

was right in reforming this deed and that he had just reason for disbelieving the statements made by the plaintiffs in the case. It appeared from the testimony that the sum of fifty cents per acre per year was in excess of the amount of delay rentals contracted for in that part of the State during that period, which was some time before the actual discovery of oil. At that time the leases usually, throughout the community in which plaintiffs resided, called for from fifteen to twenty-five cents per acre per year, as delay rental. It is, therefore, improbable that any person of ordinary business judgment would agree to pay $2 per acre per year when leases could be had in the neighborhood for the much less rentals mentioned.

This fact of wide difference is cogent evidence that the real contract of the parties was for fifty cents per acre per year, as defendant claimed. The chancellor evidently did not believe the plaintiffs' testimony, and in this we are convinced he was justified. The discovery of oil having given rise to an increase in value of the delay rentals for lands under oil lease, and it appearing in evidence that the Jacobses, as bonus for their later lease to Williams, were to receive the sum of $2100, the evidence accumulates that Jacobs and his wife were not telling the truth on the witness stand. Mutual mistake of fact contemplates a mistake of fact at the time the instrument was drawn, not as to the legal effect of the instrument but as to the facts of the agreement. (*Tope* v. *Tope,* 370 Ill. 187.) Proof of mutual mistake does not depend upon the attitude of the parties at the time of the trial; but the query is, Did the instrument, when executed, represent the actual contract of the parties? *Matthews* v. *Whitethorn,* 220 Ill. 36.

The chancellor was justified in disbelieving the plaintiffs and in reforming the lease, and the decree entered in accordance with his finding in that regard is right, and is affirmed.

*Decree affirmed.*