**J. A. Anderson, Appellant, v. Pettigrew Foundry Company et al., Appellees.**

**Gen. No. 39,902.**

Heard in the second division of this court for the first district at the December term, 1937. Opinion filed October 18, 1938. Rehearing denied November 1, 1938.

HAROLD I. CHAYES, GEORGE GILLETTE and EDMUND J. REYNOLDS, all of Chicago, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellees; JOSEPH M. TAUSSIG, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

J. A. Anderson, plaintiff herein, seeks to reverse a decree of the superior court which found the complaint as amended insufficient in law and dismissed the suit for want of equity. No testimony was adduced upon the hearing and the sole question presented is whether the complaint, as amended, was erroneously dismissed.

The material allegations of the complaint may be summarized briefly as follows: In February, 1928, the

Pettigrew Foundry Company of Harvey, Illinois, owned three parcels of real estate, described by metes and bounds, which were incumbered by a first mortgage for $14,000 and a second for $18,500, owned by Frederick R. DeYoung, deceased, and the Bank of Harvey, respectively. Subsequent to February, 1928, the foundry company agreed with the Bank of Harvey, The First National Bank of Dolton and Frederick R. DeYoung to refinance the total indebtedness of $32,500 by issuing $30,000 in bonds secured by trust deed which would constitute a first lien upon the same property and by paying the balance of the indebtedness in cash. In compliance with this agreement the foundry company executed the new bonds and trust deed, the notes secured by the first and second mortgages then outstanding were canceled and surrendered to the foundry company by the Bank of Harvey and Frederick R. DeYoung in exchange for new bonds and the trust deed securing the said notes was released. At the time of the release of the first and second trust deeds, the cancellation and surrender of the notes secured thereby, and the acceptance of the new bonds, the Bank of Harvey, the First National Bank of Dolton and Frederick R. DeYoung, as well as the foundry company, are alleged to have believed that the new bonds to be secured by the trust deed constituted a first lien on all the property of the foundry company.

It is alleged that the $30,000 in new bonds and the trust deed securing them contained a description which, by mutual mistake of fact, instead of covering all the property of the foundry company which the parties intended should be conveyed to secure said bonds covered only one of the three contiguous parcels then owned by the foundry company, being a vacant strip of land immediately adjoining the parcel on which the foundry buildings were erected, and which vacant lot had a value of only about $1,000; that after the delivery of said new bonds and trust deed all

the parties to the transaction and all persons thereafter dealing with said bonds, trust deed and the three parcels of real estate, treated the real estate, the bond issue and trust deed securing it as if the description contained in the trust deed and the bonds were the proper description of all the property of the foundry company, being said three parcels of real estate formerly described in the two mortgages for $14,000 and $18,500 respectively; that certain of said bonds were sold to various purchasers, including plaintiff, upon the representation and with the understanding that they were secured by trust deed conveying all the foundry company's property, and that plaintiff paid over $5,000 for the bonds he now owns.

It appears from the record that plaintiff had originally filed a complaint in the usual form to foreclose a mortgage predicated upon his ownership of $5,000 of the new bonds, and it is alleged in the complaint, as amended, that when the error in description was first discovered by him in October, 1936, he immediately filed an amended bill to reform the description of the real estate contained in the trust deed conveyance, as well as to foreclose because of certain alleged defaults in payment of principal, interest and taxes.

The complaint as amended asks that the description of the real estate contained in the trust deed be reformed or in the alternative that plaintiff be subrogated to the liens of the original first and second mortgages; that the cancellation of the notes surrendered in exchange for the new bonds be set aside; that the release deeds, purporting to release the liens of the original first and second mortgages, be canceled; and for the foreclosure of the equity of redemption from the new trust deed as reformed, or in the alternative from the original trust deeds.

Laura Mueller, one of the defendants, filed a motion to strike the amended and supplemental complaint,

specifying some seventeen separate grounds therefor, which may be summarized as follows: That with respect to the right of reformation plaintiff is not entitled to the relief sought because it does not affirmatively appear from the complaint that others do not claim the property in question; that it does not affirmatively appear that plaintiff, who seeks reformation, was free from negligence; that the complaint does not set forth when the bonds were acquired by plaintiff, nor the consideration paid for them; that no showing is made whether the Pettigrew Foundry Company's agreement with the Bank of Harvey, the First National Bank of Dolton, and Frederick R. DeYoung was oral or in writing, and in any event was not binding on Laura Mueller; that the complaint fails to show that any of the parties suffered damages by reason of the alleged mistake, and especially the Bank of Harvey and the First National Bank of Dolton, since the bonds were sold to various parties and they and Frederick R. DeYoung were paid in full therefor; that subsequent purchasers had no right to rely upon the representation, when that portion of the property which was included in the mortgage was a matter of public record; and that the plaintiff is precluded from maintaining his complaint because of laches.

The interest of defendant Laura Mueller arises out of a quitclaim deed to her recorded January 18, 1937, during the pendency of this suit and more than two months after the filing November 12, 1936, of the amended and supplemental complaint to reform and foreclose.

Defendants' brief and argument refers at length to facts set up in an affidavit filed by one of their attorneys in support of the motion to dismiss, and to stipulations of fact which are said to have been entered into by counsel when the motion to dismiss was argued. In presenting their argument showing the interest of

Laura Mueller, and her status as a party to the proceeding, reference is made by defendants' counsel to the averments of this affidavit and the stipulations. An examination of the record, however, discloses that these matters were not properly before the court and should not be considered on appeal, for the following reasons: To the amended and supplemental complaint filed November 12, 1936, Laura Mueller filed a motion to dismiss to which she attached a rather lengthy affidavit made by one of her attorneys, the averments of which are interwoven in the argument as to the legal sufficiency of the amended complaint. It appears that subsequently, June 3, 1937, Laura Mueller obtained an order of court allowing her to withdraw her motion to dismiss and the affidavit in support thereof and granting her leave to file on or before June 14, 1937, ''an amended motion to dismiss and strike the amended and supplemental complaint herein and such affidavits in support thereof as counsel for Laura Mueller consider proper and are in compliance with the practice act and rules of court.'' No further or other affidavits were thereafter filed by Laura Mueller or her counsel. Shortly after the entry of the above order, plaintiff on June 10, 1937, by leave of court filed the amended and supplemental complaint which with the short amendment thereto constitutes the pleadings here under consideration. Thereafter defendant filed her motion to dismiss the amended and supplemental complaint, and the only affidavit filed in connection with this motion was the usual affidavit averring that the motion was well founded in point of law and not interposed for delay. We are therefore constrained to disregard the facts set forth in the affidavit or used in connection with the argument seeking to support the court's order and dismissing the complaint on grounds of insufficiency, and limit our consideration to the sufficiency of the complaint, as amended, to the allegations therein contained.

The motion to strike takes the place of a demurrer under the old practice and admits the following material facts stated in the amended complaint: The foundry company in March, 1928, owned three contiguous parcels of real estate which it had acquired for over $55,000 at different times. It then entered into an agreement with Frederick R. DeYoung and the two banks to secure an issue of $30,000 of its bonds by a first lien on all such real estate. Pursuant to this agreement bonds were issued and the trust deed sought to be reformed and foreclosed was executed, containing a description which under the averments of the amended complaint all parties believed was a description of all the real estate, but which actually was a description of only a small and worthless part thereof. The motion to strike further admits that the three parcels of real estate owned by the foundry company consisted of one tract, which was part of Block G in a subdivision known as Harvey; that two parts of said Block G were not owned by the foundry company, one directly east of the tract owned and one directly west thereof; that in order to properly describe the tract owned it was necessary to exclude the parts of Block G not owned by the foundry company, and in drafting the description to be inserted in the trust deed it was the intention of the parties to exclude these two parts not owned by the foundry company; that in the description used the clause excepting the part on the west was correct, but the language used erroneously excluded, not only the property on the east not owned by the foundry company, but also excluded the principal part of the tract, which the foundry company did own and on which the foundry buildings were located, which, with the fixtures, machinery and equipment therein, were particularly intended to be the security for the $30,000 bond issue. The amended complaint specifically describes the erroneous part of the description contained in the trust deed, as well as that part

of Block G which the parties intended to exclude, and also a description of parcels one and two, owned by the foundry company, which were intended to be included in the property conveyed by the trust deed. The motion to dismiss likewise admits that some of these bonds secured by the trust deed containing this erroneous description were sold to the public, and between the time of the execution of the trust deed in 1928 and the discovery of the mistake by plaintiff in 1936 everyone dealing with the property or the bonds, including the purchasers thereof, as well as the two banks and Frederick R. DeYoung, treated the trust deed as a lien on all the foundry company's real estate.

It appears also from the amended complaint that after the execution of this trust deed but before the mistake was discovered the foundry company was adjudged bankrupt; that during the bankruptcy proceeding all the property of the bankrupt was treated by both the parties to the bankruptcy proceeding and by the federal court as being subject to the lien of a trust deed, and that although the trust deed actually only described one, a vacant lot, the federal court by its order entered November 21, 1932, adjudged that the trust deed not only covered the land and buildings, but also that most of the machinery and equipment in the buildings were fixtures covered by the trust deed; and that the above order was entered upon the petition of Otto F. Reich, as trustee in the trust deed sought to be reformed; that subsequently the U. S. District Court sold the three parcels of real estate which had cost the bankrupt over $55,000, subject to the lien of this trust deed for $1,400, a price which evidently made allowance for the $30,000 principal and interest due on the bonds secured by the trust deed and a $20,000 junior mortgage issued later containing the same incomplete description.

The instant proceeding was brought June 4, 1936, by certain bondholders as a complaint to foreclose a mortgage. After the complaint was filed the then plaintiffs sold their bonds to J. A. Anderson, the present plaintiff, for some $5,000. This sale occurred prior to October 1, 1936. Anderson was then substituted as plaintiff herein, and while he was prosecuting the foreclosure, his counsel discovered the mistake in the description contained in the trust deed and bonds, and thereupon, November 12, 1936, filed an amended and supplemental complaint to reform the instrument and for foreclosure. This was the first discovery of the error, and it appears from the allegations of the amended complaint that all persons dealing with the bonds or real estate prior thereto treated them as a first lien on all three parcels and the real estate as all subject to the lien of the trust deed.

The law is well settled that equity has power to reform and correct a mortgage which in consequence of mistake fails to embody the contract actually intended by the parties to be made; and this relief may be granted in an action for the foreclosure of the mortgage; that is, the bill may pray for reformation of the mortgage and for its foreclosure as reformed, and the court in a proper case may decree accordingly. (Black on Mortgages, 1st Ed., par. 75, p. 102; *Citizen's Nat. Bank v. Dayton,* 116 Ill. 257.) The circumstances necessary to make a proper case for the action of a court of equity in this behalf are well stated in *Gassert v. Black,* 11 Mont. 185, 195, as follows: "In order that a written instrument may be reformed in equity for mistake, it must appear that the parties agreed upon a certain contract; that they executed a contract, the one sought to be reformed; that the contract executed was not the one agreed upon; that the variance between the contract agreed upon

and the one executed occurred by mistake; in what the mistake consisted; and that the mistake was mutual.''

This doctrine was affirmed in our own State in *Skelly v. Ersch,* 305 Ill. 126, and in *Pearce v. Osterman,* 343 Ill. 175, wherein the Supreme Court held that equity will reform a deed or other instrument of writing upon the ground of mistake, where the mistake was one of fact and not of law, the proof clearly and convincingly showing that a mistake was made and that it was mutual and common to both parties to the instrument. Counsel for defendants concede this fundamental proposition of law, but they say that reformation cannot be allowed under the allegations of the amended complaint in this proceeding, for three principal reasons: (1) the party seeking reformation is guilty of negligence; (2) laches preclude plaintiff from obtaining the relief sought; and (3) it would be inequitable to allow reformation as against defendant Laura Mueller, because it is not averred that when she acquired her deed to the property she had notice of the error and is therefore in the position of an innocent purchaser for value.

Considering first the question of negligence, the law seems to be well established that negligence to bar the reformation of a deed in case of mutual mistake, must be so gross as to amount to the violation of a positive legal duty, and estoppel does not arise where the act of the party sought to be estopped was due to ignorance by reason of an innocent mistake. (*Pearce v. Osterman,* 343 Ill. 175.) The courts have pointed out that in a sense every mistake involves some negligence, and in *Columbian Nat. Life Ins. Co. v. Black,* 35 F. (2d) 571, it was said to be obvious that negligence in itself is not a defense in a suit for reformation, because there would be no ground for reformation because of mutual mistake inasmuch as mistakes nearly always presuppose negligence. In *Skelly v. Ersch,* 305 Ill. 126;

*Federal Land Bank v. Kenshalo,* 258 Ill. App. 1; *Citizens Nat. Bank v. Dayton,* 116 Ill. 257; *Milmine v. Burnham,* 76 Ill. 362; *Omicron Co. v. Linge,* 189 Wash. 157, and various other decisions cited in plaintiff's brief, mistakes occurred in the description of real estate, and the assignees, who might also have discovered the mistake before purchasing the security, were held to be entitled to reformation. It appears reasonably clear from the allegations of the amended complaint in the instant proceeding that both the Pettigrew Foundry Company, the banks and Frederick R. DeYoung intended to pledge the real estate and buildings of the Pettigrew Foundry Company as security for the $30,000 bond issue, to take the place of the two mortgages which were immediately released upon the execution of the new security. The parties had agreed upon a contract to issue $30,000 of bonds of the Pettigrew Foundry Company, secured by a first mortgage on all its real estate, and the banks and Frederick R. DeYoung had agreed to accept bonds so secured. This contract was executed and the bonds issued in pursuance of the agreement. The amended complaint clearly states that the contract executed was not the one agreed upon, and that the bonds and trust deed described only a small part of the foundry company's real estate, not including the parcel upon which its buildings were located. Undoubtedly the variance between the contract executed and the one agreed upon occurred by mistake, the mistake consisting, according to the complaint, of a failure to describe all of the parcels of land owned by the foundry company. This mistake was mutual, all the parties, as well as the trustee, believing that the bonds and trust deed contained a description of all the foundry company's property. Under the decisions hereinbefore referred to, all of the elements necessary to afford reformation in equity are present and sufficiently alleged in the amended complaint, and

the negligence which is assigned as one of the grounds for the insufficiency of the bill amounted to no more than such negligence as is necessarily implied by the mistake itself and not such as would constitute a bar to plaintiff's right for relief.

Nor does it seem to us that the doctrine of laches is applicable to this proceeding. It is an inherent element of laches, not only that a considerable period of time elapse and that the one charging it be prejudiced, but that the party sought to be charged therefor have knowledge of the facts. (*Federal Land Bank v. Kenshalo,* 258 Ill. App. 1; *Peabody v. Burri,* 255 Ill. 592.) The amended complaint in this proceeding clearly shows that the mistake was not discovered by anyone until 1936, when plaintiff's counsel, after first filing a complaint for foreclosure, discovered the error in description, and according to the complaint plaintiff amended his bill immediately thereafter. Manifestly plaintiff was unaware of the mistake until checking up the description with the survey, and under the circumstances he cannot be charged with lack of diligence, because his complaint was immediately thereafter amended.

The remaining ground assigned by Laura Mueller in her motion to strike the amended complaint is that it does not allege that she had notice of the mistake, and that she was in the position of an innocent purchaser for value. We think it a sufficient answer to this contention that she acquired her interest *lis pendens.* The record discloses that the first complaint to reform the trust deed was filed November 12, 1936, and became effective as *lis pendens* from and after that date. It is alleged that defendant's deed from Adolph Becker was recorded January 18, 1937, more than two months after the amended complaint to reform was filed. Par. 53, sec. 1, p. 250, ch. 22, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 106.18], provides

"that every suit in equity, . . . affecting or involving real property shall, from the time of the filing of the complaint or petition, be constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person and every person acquiring an interest or lien as aforesaid, not in possession of said property and whose interest·or lien is not shown of record at the time of filing such complaint or petition, shall, for the purposes of this Act, be deemed·a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he were a party thereto. . . ." It therefore appears that Laura Mueller took whatever interest she acquired in the real estate by her quitclaim deed from Adolph Becker *lis pendens,* and under the foregoing statute she is deemed to be a subsequent purchaser and not an innocent purchaser for value.

The amended complaint making Laura Mueller defendant alleges that she "claims to have some interest in the mortgaged premises, including said parcel No. 1, by reason of a certain quitclaim deed . . . from Adolph Becker purporting to have been executed and delivered . . . on the 18th day of January, 1937, and filed for record with the Recorder of Deeds of Cook county as document No. 11937389 and recorded in book 33423, on page 200." When the matter is again heard in the superior court, and Laura Mueller sets up her chain of title by answer, plaintiff will be entitled to show that his rights are superior to those of defendants, and the question of her status as an innocent purchaser can then be determined.

The mutual mistake of fact relied upon in this case is not uncommon, as shown by a great number of cases in which reformation has been decreed, and the amended complaint sets forth a cause of action which under the great weight of authority conforms to cir-

cumstances under which courts of equity have invariably granted the relief sought.

We are therefore of the opinion that the chancellor erred in dismissing the amended complaint, and the decree is therefore reversed and the cause remanded with directions that defendants be required to answer the complaint and that such further proceedings be had as shall not be inconsistent with the views herein expressed.

*Reversed and remanded with directions.*

SCANLAN and SULLIVAN, JJ., concur.