Walter Blumenfeld, Plaintiff-Appellee, v. Leo Neuman, Defendant-Appellant.

Term No. 53–F–4.

Opinion filed May 16, 1953. Released for publication June 4, 1953.

FORTH & FORTH, of Granite City, for appellant.

F. E. MERRILLS, of Belleville, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

This suit pertains to a lease of a fifty-foot lot for a term of three years at $50 per month, with option to renew for seven years additional, at the same rent. The lessor contends that the lease was intended to apply only to the "West Thirty Feet of" said lot, and that the quoted words were omitted by mutual mistake.

The lessee, Walter Blumenfeld, filed the suit asking for an injunction to restrain the defendant lessor, Leo Neuman, from continuing trespass upon a part of the said premises. The defendant answered, denying the trespass and setting out a special defense consisting of a detailed statement of the alleged mutual mistake above mentioned. Plaintiff's reply denied all the allegations in the special defense.

The court found that after the new lease, defendant had built a building on the East 20 feet of the lot and it would be inequitable to require its removal. The decree ordered that the lessee should be permitted to occupy the premises rent free for the whole term of the lease, including the optional extension. Since the lessee had already paid rent for more than three years, the

307

decree required defendant to refund all of that rent, in the sum of $1,950, besides foregoing the collection of several thousand dollars in rents to accrue in the future.

It appears that both parties hereto were owners of competing stores within 150 feet of each other, selling groceries, meats and general merchandise, and each party was renting from the other. The plaintiff had originally obtained his lease from a prior owner, and it applied only to the building on the West 30 feet of the lot. The term was five years at $50 per month with option for renewal, which plaintiff had exercised, at the same rental and for another five years.

Prior to the expiration of this second five-year term, the lease on the property occupied by defendant expired, and, as a condition to renewal thereof, he was required to make a new lease to plaintiff. The dispute is whether the new lease to plaintiff was for the 50 foot lot, or just the building on the West 30 feet, like the previous lease.

At the time the new lease was negotiated, there was a somewhat delapidated frame building on the East 20 feet of the lot, occupied by a pool hall and some residential tenants. The rents therefrom aggregated $46 per month. After the new lease was signed, the defendant continued to collect these rents for about a year and a half, including some months after the beginning of the term under the new lease. During all this period, the plaintiff made no claim to these premises, nor any objection to defendant collecting the rent therefrom. Plaintiff explains that he was fearful of making himself liable for the defective condition of the building, if he collected the rents.

This frame building was finally condemned and removed. Shortly thereafter, defendant commenced the construction of a brick store building on these premises. The date it was commenced is disputed, but there

appears to be no doubt that plaintiff made no objection to the construction, until he filed this suit, at which time the building was practically completed. Apparently, plaintiff learned that defendant planned to move his own business into this new structure which, naturally, plaintiff did not welcome.

The defendant testified positively that the negotiations for the new lease pertained to the West 30 feet only, that the building thereon was specifically mentioned, that neither he nor his lawyer drew the lease, it was drawn by plaintiff's lawyer, his brother, in St. Louis, and the lease is on a Missouri form. There is a discrepancy as to how the lease was delivered and to whom, but both parties agree that they went together to a notary public to execute it. Defendant testified that there it was again mentioned the lease pertained to the store building occupied by plaintiff. This is corroborated by the notary, but denied by plaintiff.

Plaintiff testified that at one time during the negotiations the defendant said he intended to tear down the frame building and that plaintiff could then use the space for a parking lot. This is denied by defendant, but we note that even the plaintiff does not assert that there was any agreement to *lease* the space to him. Plaintiff contents himself with denying any mention of the description.

The alleged statement about removal of the building was vague, and indefinite as to time. Of more importance: in all of plaintiff's testimony he made no mention of any statement by either party as to what premises were to be included in the new contract. Since the parties were making a new lease before the expiration of the old, absence of any reference to the description would indicate both were talking about that which had previously existed. Added to this is the fact that the renewal was at the same rate, although the remainder

of the lot was then producing almost as much income as the part occupied by the plaintiff.

These facts, coupled with the other testimony, especially the lessor's continued control of part of the lot without objection, would seem to make as clear a case of mistake as can be found in the books. But apart from all this, the lease itself furnished positive evidence of the scrivener's mistake and of the true intent of the parties. It is therein stated that plaintiff is to have and to hold the premises "for no other purpose or business than that of groceries, meats, and general merchandise."

It is further provided that no part of the premises shall be "sublet, used or permitted to be used for any purpose other than above set forth without the written consent of the Lessor endorsed hereon." This was written at a time when part of the lot was used for entirely different purposes, and continued to be so used after the lease became effective.

It is further provided that "The Lessee agrees to keep said premises in good order and repair," etc. If plaintiff is correct that the lease covers the whole lot, then he had agreed to keep the old frame building "in good order and repair," which is entirely inconsistent with his asserted effort to avoid any liability in connection therewith.

There is the usual provision for the event of destruction of "said building" by fire, etc. Also provision is made for arbitration in case the parties cannot agree as to the condition of "said building." There being two buildings on the 50-foot lot, reference to "said building" is highly significant.

■ The trial court seems to have based the decision upon two citations, *Tope v. Tope,* 370 Ill. 187, and *Biskupski v. Jaroszewski,* 398 Ill. 287. Both cases state the rule: "The evidence required to reform a written instrument must leave no reasonable doubt as to the mu-

tual intentions of the parties. A preponderance of the evidence is not sufficient."

The first of these cases involved an attempt to reform a deed made some 50 years before, between other parties, and there was no evidence about their intent. The second involved an instrument pertaining to a storeroom and the plaintiff asserted that it was supposed to apply to the whole building. This is nearer the point, but the plaintiff admitted that, at the time the contract was signed, she knew it did not describe the whole building. Both cases recognize that proof may be made of a mistake in description, but a high order of proof is required.

This does not mean that convincing evidence must be ignored merely because the opposing party denies there was a mistake. In all the following cases reformation was granted to plaintiffs in spite of denials or protests of defendants: *Skelly v. Ersch*, 305 Ill. 126; *Pearce v. Osterman*, 343 Ill. 175; *Krabbenhoft v. Gossau*, 337 Ill. 396, 408; *Lidikevicz v. Kopala*, 315 Ill. 404, 408; *McGinnis v. Boyd*, 279 Ill. 283, 286; *Koch v. Streator*, 218 Ill. 546; *Keeley v. Sayles*, 217 Ill. 589; *Stanley v. Marshall*, 206 Ill. 20, 30; *Kelly v. Galbraith*, 186 Ill. 593; *Thompson v. Ladd*, 169 Ill. 73; *Purvines v. Harrison*, 151 Ill. 219; *Warrick v. Smith*, 137 Ill. 504; *Bradshaw v. Atkins*, 110 Ill. 323.

Plaintiff's brief makes the point that the acts of the parties after executing the lease cannot be used as a basis of estoppel, citing *Young v. Illinois Athletic Club*, 310 Ill. 75. We do not regard the doctrine of estoppel as having anything to do with the issue in this case. Where there is evidence of a mistake in a description, the fact that the grantor or lessor was permitted to remain in possession of the part in dispute is evidence of knowledge that said part was not intentionally included. Thus, in *Skelly v. Ersch,* 305 Ill. 126, the fact that the grantor was permitted to plow and cultivate

311

the land in dispute, was regarded as evidence of a mutual mistake. Other cases in the list above cited contain the same result, such as: *Pearce v. Osterman,* 343 Ill. 175; *Kelly v. Galbraith,* 186 Ill. 593; *Thompson v. Ladd,* 169 Ill. 73.

██ Appellee also cites *Weill v. Centralia Service & Oil Co.,* 320 Ill. App. 397, to the effect that, in construing a lease, the provisions will be given effect according to their terms, and the conduct of the parties is irrelevant when there is no ambiguity. That statement was made, obviously, with reference to construction of the agreed provisions, not as to a mistake. The case also involved a mistake, but the opinion specifically states that "No complaint is made that the court committed error in reforming the lease." The decision is not in point on mutual mistake.

██ Finally, plaintiff argues that defendant was negligent in not reading the lease and observing the error. It should be noted that this is not an argument that no mistake was made, but rather that relief should be denied because of the negligence. This argument has been asserted in many cases. The general rule is: "Negligence to bar the reformation of a deed in case of mutual mistake must be so great as to amount to a violation of a positive legal duty." *Pearce v. Osterman,* 343 Ill. 175. And the following principle appears in decisions from many jurisdictions: It is obvious that negligence itself is not a defense to reformation, since there would then be no ground for reformation because of mutual mistake, inasmuch as mistakes nearly always presuppose negligence. *Columbian National Life Ins. Co. v. Black,* 34 F. (2d) 571; *Anderson v. Pettigrew Foundry Co.,* 297 Ill. App. 14, citing cases. And see 105 A. L. R. 847n.

██ In our opinion the evidence, and the lease itself, in this case, clearly and convincingly show that the scrivener made a mistake in the description, and the

special defense should have been sustained. Accordingly that part of the decree which denies the injunction is affirmed, and that part which awards free occupancy to plaintiff, and judgment for rent already paid is reversed, and the cause remanded with directions to dismiss the complaint.

*Affirmed in part and reversed in part, and remanded, with directions.*

BARDENS, P. J. and CULBERTSON, J., concur.