HENRY HARDEN *et al.*, Plaintiffs, *v.* LOUIS DESIDERI *et al.*, Defendants— (WILLIAM J. BRADFORD *et al.*, Counterplaintiffs-Appellants, *v.* LOUIS DESIDERI *et al.*, Counterdefendants-Appellees.)

(No. 57415;

First District (2nd Division)—June 28, 1974.

Chester A. Lizak, of Chicago, for appellants.

Alan M. Depcik, of Katz, Karacic & Mansfield, of Chicago, for appellee Louis Desideri.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, of Chicago (C. Harker Rhodes, Jr., and Mitchell L. Hollins, of counsel), for appellee Draper & Kramer.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

William J. Bradford, Franklin B. Evans, Jr., Charles L. Bradford, and Robert O. Evans, appellants, were apparent successor beneficiaries of a certain land trust agreement dated 24 May 1940, and known as Trust Number 32308, wherein the Chicago Title and Trust Company was named trustee and was to hold title to certain land, including the first-floor store located at 4700 S. Indiana Avenue in Chicago, which was used as a tavern (hereafter tavern).

The trust agreement included the following pertinent provisions:
"* * *

(2) IT IS UNDERSTOOD AND AGREED by and between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of the power to direct the Trustee to deal with the title to said property, and the right to manage and control said property as hereinafter provided, and to receive the proceeds from rentals, mortgages, sales, or other disposition of said premises, and that such interest and rights in the avails of said property shall be deemed to be personal property, which interest and rights may be assigned or transferred as personalty. No owner of the shares or units of beneficial interest under this trust shall at any time have any right, title or interest in or to the said real estate as such, or any portion thereof, either legal or equitable, the owner's interest being exclusively in the earnings, avails and proceeds as aforesaid. The death of any owner of beneficial interest hereunder shall not terminate the trust nor in any manner affect the powers of the Trustee hereunder, and in the event of the death of any such owner during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator as personalty, and not as realty to his or her heirs at law.

(3) The Trustee will deal with the aforesaid real estate only when authorized so to do in writing by the owner or owners of two-thirds (⅔) or more of the shares or units of beneficial interest hereunder, and the Trustee will, upon the written direction of the owner or owners of two-thirds (⅔), or more of the shares or units of beneficial interest hereunder, or such other person or persons as shall be from time to time named

in writing by the said owner or owners, or on the written direction of such person or persons as may be the owner or owners of such shares or units at the time, make deeds for, or otherwise deal with the title to said real estate; provided, however, that the Trustee shall not be required to enter into any personal obligation or liability in dealing with said land or to make itself liable for any damages, costs, expenses or penalties, or that the Trustee shall not be required to deal with the title so long as any money is due it hereunder. Otherwise, the Trustee shall not be required to inquire into the propriety of any such direction. It shall not be the duty of the purchaser of the said real estate, or any part thereof to see to the application of the purchase money paid therefor; nor shall any one who may deal with the Trustee be required or privileged to inquire into the necessity or expediency of any act of the Trustee or of the provisions of this instrument.

(4) The owner or owners of two-thirds (⅔) or more of the shares or units of beneficial interest hereunder shall have the right to manage this aforesaid property and to control the selling, renting and handling thereof, and shall collect and handle the rents, earnings, avails and proceeds thereof; and the Trustee shall have no duty in respect of such management and control, or the collection, handling or application of such rents, earnings, avails or proceeds, or in respect of the payment of taxes or assessments or in respect of insurance, litigation or otherwise, except upon written direction, and after payment to it of all money necessary to carry out such instructions as herein provided. No owner or owners of the shares or units of beneficial interest hereunder shall have any authority to contract for or in the name of the Trustee or to bind the Trustee personally.

\* \* \*

(6) The real estate firm of DRAPER & KRAMER, INC., an Illinois corporation, is hereby designated agent for the owners of the beneficial interest under this trust, to manage and operate the trust property, to lease the same as such agent, to receive and collect the rents therefrom, and to disburse or distribute net rentals in accordance with whatever instructions it may receive from time to time from the owner or owners of two-thirds (⅔) or more of the shares or units of beneficial interest hereunder. In all matters relative to said agency, Draper & Kramer, Inc., is hereby authorized and

directed to act upon the written instruction of the owner or owners of two-thirds (⅔) of the shares or units of beneficial interest hereunder, and said agency shall continue until revoked and terminated by a notice in writing signed by the owner or owners of two-thirds (⅔) or more of the shares or units of beneficial interest hereunder, and delivered to the principal office of Draper & Kramer, Inc., in the City of Chicago, Illinois. The Trustee shall have no duties, obligations or responsibilities in connection with the said agency, it being expressly understood that there shall be no agency relationship existing between the Trustee and Draper & Kramer, Inc., and that the said agent at all times shall be acting exclusively as the representative of the owners of the beneficial interest in this trust and that said agent shall have no right or authority to contract for or in the name of the Trustee or to do any acts or things for or in the name of the Trustee, excepting only that said agent may, if and when directed so to do by the owner or owners of two-thirds (⅔) or more of the shares or units of beneficial interest hereunder, pay general real estate taxes and special assessments levied or assessed against the trust property in the name of Chicago Title and Trust Company as Trustee under this agreement."

On 10 August 1965, Draper and Kramer, purporting to act as agent for the *trustee*, in an apparent violation of the trust provisions, entered into a written lease of the tavern to one Louis Desideri for a period of 1 year, commencing 1 January 1966 and ending 31 December 1966. The lease provided that the tavern was to be used "as a confectionary [*sic*] store and tavern with the retail sale of tobaccos, fountain lunches and package liquor." The lease also contained the following pertinent provision:

"Lessee hereby covenants that he will at all times, protect, defend, indemnify and hold harmless the said lessor and lessor's Agent, and the Officers, Directors and Agents of each of them, from and against any and all loss, liability, suits, claims, costs, expenses or damages, resulting from or caused in whole or in part, by the selling, dispensing or giving away of alcoholic liquors in or upon or about said demised premises, by any person, firms or corporation whatsoever, whether such liability is based upon any statute of the State of Illinois, or upon the common law, or arising out of the violation of any statute, ordinance, regulation or duty imposed by any statute or the Common Law or otherwise."

On 23 July 1966, one Amos Bain allegedly attacked one Henry Harden

with a beer bottle while both men were in the tavern. Harden allegedly suffered a severe shock to the nervous system, in addition to severe physical injuries, both internal and external, including the loss of his left eye. On 24 May 1967, Harden and his wife, Arcola (hereafter Hardens), filed an amended complaint against Desideri; the Chicago Title and Trust Company (hereafter trustee); Amos Bain; and William J. Bradford, Franklin B. Evans, Jr., Vivian Brown Spear, Charles I. Bradford, and Robert O. Evans (hereafter collectively referred to as the beneficiaries of the land trust). The Hardens alleged that Desideri, by and through his agents and employees in his behalf, sold or gave to Bain, while in the tavern, alcoholic liquors in such quantities as to then and there cause, in whole or in part, his intoxication; and that, while so intoxicated, he assaulted Henry Harden, causing his injuries. The Hardens claimed that, by virtue of the Illinois Dram Shop Act (Ill. Rev. Stat. 1967, ch. 43, sec. 135), a cause of action had accrued to each of them, and each sought damages under the Act from Desideri, the trustee, and the beneficiaries by virtue of their status as operator and owners of a dram shop respectively. (There was also a count in the complaint seeking damages from Amos Bain.)

On 29 October 1971, a court order was entered, pursuant to a settlement agreement, dismissing the principal action, but stating that "any cause of action which defendants may have against each other shall survive this dismissal of plaintiff's [sic] complaint."

Thereafter, on 23 November 1971, the beneficiaries filed an amended counterclaim in chancery against Desideri and Draper & Kramer. In Count one of the amended counterclaim in Chancery, the beneficiaries alleged that Draper & Kramer and Desideri, in their negotiations leading to the lease, had agreed that the *beneficiaries* would be the lessors; that the *trustee* was thereafter negligently designated as lessor by Draper & Kramer; that Draper & Kramer negligently executed the lease as agent for the *trustee* instead of as agent for the *beneficiaries*; that, according to the lease, Desideri had agreed to indemnify the *lessor* for certain losses (see indemnity provision supra); that Desideri did occupy the premises for the full term of the lease, paying the amount of rent set forth in the lease; that the Hardens did allege a cause of action against the beneficiaries and Desideri; that Desideri acknowledged in writing his obligation to the *beneficiaries* under the indemnification clause; and that, in settlement negotiations, Desideri had stated his assets to be a 5-year-old car and $480 in a checking account, but that he had recently conveyed real property to his wife by quit-claim deed. Having no adequate remedy at law, the beneficiaries asked that the lease be reformed to show that they were, in fact, the *lessors* and that Draper & Kramer

be designated *their* agent. Then, the lease being so reformed, the beneficiaries asked that Desideri be ordered to comply with the indemnity provision of the lease and pay them all the sums that they had been required to pay to the Hardens as a result of this principal suit, plus expenses.

In Count II of the amended counterclaim in Chancery, the beneficiaries, apparently in an alternative to Count I, asked for indemnity from Desideri based on the theory of "active-passive" conduct. Specifically, they allege that their conduct in owning the tavern was merely passive in nature, whereas Desideri's conduct in serving Bain intoxicating liquors and thereby causing his intoxication, was active.

On 24 January 1972, Desideri petitioned the court to strike Count I, alleging various grounds for the impropriety of reformation in this case; and also to strike Count II, alleging that there had not been any factual determination as to his actions and that, in any case, the penal nature of the Dram Shop Act should preclude any liability on the basis of "active-passive" conduct. ·

The petition of Desideri was sustained by order of the trial judge and Counts I and II of the amended counterclaim in Chancery were stricken. The beneficiaries are appealing from that order.

### As to Count I

The beneficiaries seek to reform the lease by having *themselves* designated as the lessors in place of the trustee, and by having Draper & Kramer designated as *their* agent (rather than as agent for the trustee). They seek reformation on the ground that the designation of the *trustee* as lessor was a mutual mistake of fact and that equity will cure such an error. Desideri, while acknowledging that a court of equity has such power, contends: that the mistake was not one of fact; that it was not mutual; and that the beneficiaries are strangers to the instrument and, as such, have no standing to seek reformation of it.

■■ The basis for a reformation action is an understanding between the parties. What is sought to be reformed is not this understanding, but rather an instrument which inaccurately reflects it. There can be no reformation where there has not already been a meeting of the minds. In *Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 28, 37 N.E.2d 760, our supreme court stated the basis of an action for reformation:

> "Mistakes are generally divided into two groups, first, those fundamental in character, relating to an essential element of the contract which prevent a meeting of the minds of the parties and so no agreement is made. These generally have to do with such matters as the existence and identity of the subject matter,

errors as to price, quantity, and the like. In the other class of mistakes an actual good-faith understanding is reached but through some error, not expressed, the agreement reduced to writing is not the actual agreement. The former of these classes constitutes ground for rescission but not reformation, while the latter may be reformed. An action to reform a written agreement rests upon a theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake of one side and fraud on the other, some provision agreed upon was omitted, and the action is to so change the instrument as written as to conform it to the contract agreed upon, by inserting the provisions omitted or striking out the one inserted by mutual mistake. Equity cannot make a new agreement for the parties under the color of reforming the one made by them, or add a provision which they never agreed upon. Where a writing expresses an actual agreement it cannot be reformed by inserting provisions not agreed upon."

The alleged mistake which the beneficiaries seek to reform is not the fact that Draper & Kramer negligently designated the *trustee* as lessor and itself as the *trustee's* agent, but rather, the resulting fact that the lease itself, as executed by both parties, failed to reflect their actual agreement. In other words, both parties mistakenly thought that the document which they executed properly reflected their prior agreement, namely: that the lease was to be between Desideri and the beneficiaries with Draper & Kramer acting as the agent for the beneficiaries. This allegation is substantiated by the fact that, on 13 November 1967, after the lease had expired and the principal lawsuit had been instituted, Desideri, through his attorneys, acknowledged his duty to the beneficiaries under the indemnity provision of the lease. Examining the alleged mistake in this light, it was obviously mutual.

■■ Desideri, however, contends that the mistake cannot be characterized as mutual since it was caused by the negligence of Draper & Kramer. We do not agree. The alleged mistake was made by both parties when they signed the lease believing it to embody their prior agreement. In addition, the negligence of a party is not a bar to reformation, since one's mistake commonly arises from one's own negligence. To hold that negligence is a bar to a party's right to seek reformation would preclude the remedy in most cases. In *Blumenfeld v. Neuman* (1953), 350 Ill.App. 306, 312, 112 N.E.2d 742, the court stated:

"The general rule is: 'Negligence to bar the reformation of a deed in case of mutual mistake must be *so great as to amount to a violation of a positive legal duty.' Pearce v. Osterman*, 343 Ill. 175.

And the following principle appears in decisions from many jurisdictions: It is obvious that negligence itself is not a defense to reformation, since there would then be no ground for reformation because of mutual mistake, inasmuch as mistakes nearly always presuppose negligence. *Columbian National Life Ins. Co. v. Black*, 34 F. (2d) 571; *Anderson v. Pettigrew Foundry Co.*, 297 Ill.App. 14, citing cases. And see 105 A.L.R. 847n."

Nowhere in the beneficiaries' amended petition is there any admission of anything other than simple negligence.

■■■ Given the mutuality of the alleged mistake or mistakes, we must next determine whether they were mutual mistakes of fact or mistakes of law. If Draper & Kramer's negligent designation of the trustee as lessor and of itself as the trustee's agent was merely overlooked by the parties in executing the lease, then their mistake was clerical and, therefore, one of fact. Again, if Draper & Kramer's negligent designations and the parties' subsequent mistaken execution of the lease were based on the belief that the trustee could be designated as lessor and still accomplish the underlying agreement to have a lease between the beneficiaries and Desideri, this mistake was not one of law since the law authorizes either the beneficiary or the trustee of a land trust to act in the capacity of lessor when the provisions of the governing trust agreement so authorize, as they do in the instant case. (See *Guaranty Bank & Trust Co. v. Reyna* (1964), 51 Ill.App.2d 412, 201 N.E.2d 144; *Klein v. Ickovitz* (1970), 121 Ill.App.2d 191, 257 N.E.2d 187.) And even had the parties designated the trustee as lessor under the misapprehension that the beneficiaries could not legally act in that capacity, such a "mistake of law" is not always a bar to reformation, where the instrument does not reflect the true intent of the parties. See *Barkhausen v. Continental Illinois National Bank & Trust Co.* (1954), 3 Ill.2d 254, 120 N.E.2d 649; *Peter v. Peter* (1931), 343 Ill. 493, 175 N.E. 846; *Dinwiddie v. Self* (1893), 145 Ill. 290, 33 N.E. 892.

The other possible mistake which Desideri points out was that Draper & Kramer was under the misapprehension that it was authorized to execute an instrument as agent for the trustee. Desideri contends that this proscription was a matter of law. We disagree. As a matter of law, it would not have been illegal for Draper & Kramer to act as agent for the trustee (see *Guaranty Bank & Trust Co., supra*). Rather, Draper & Kramer's inability to act as agent for the trustee was imposed by the particular fact situation presented by this particular trust agreement. Draper & Kramer's alleged negligence was the result of a misunderstanding or ignorance of the facts of that agreement, and not of the law governing it.

■■ Given an alleged mutual mistake of fact, Desideri insists that reformation is not available in this case since the beneficiaries were not parties to the lease as executed, and since a stranger to a contract has no standing to seek reformation. The concept of reformation is based on an existing, underlying agreement between the parties which is not properly reflected when reduced to written form. In the present case, the beneficiaries allege that Desideri and their agent had entered into a lease agreement which was not properly reflected in the executed lease. It can hardly be said that a party to the basic underlying contract is not a party to the written version of that understanding merely because his name is omitted from that document by mistake. To allow such a result would be to destroy the original understanding and the rights of the parties to that understanding. Equity will not allow such a result. Our courts have held that a deed of trust may be reformed to substitute the proper grantor where another was mistakenly inserted (*West v. Madison County Agricultural Board* (1876), 82 Ill. 205); and a deed may be reformed to substitute the name of the intended grantee for one named by mistake (*Bohanan v. Bohanan* (1879), 3 Ill.App. 502). (See also *Fisher v. Barnett* (1895), 56 Ill.App. 649.) We can find no reason why a lease cannot be reformed to substitute the name of the intended lessor for the name of the lessor mistakenly inserted, if the mistake was mutual and one of fact.

In support of his petition to strike Count I of the amended counterclaim, Desideri raised a number of other issues which were not supported by any authority and which he chose not to pursue on appeal. While these could be deemed as waived (*Quinn v. Larson* (1966), 77 Ill.App.2d 240, 222 N.E.2d 239), we will consider them briefly.

■■ Desideri contended that the court below had no jurisdiction in that the subject matter of Count I was not related to the principal law action. Section 38(1) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, § 38(1)) provides:

> "Subject to rules, any demand by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross-bill in equity, cross demand or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross demand in any action, and when so pleaded shall be called a counterclaim."

Clearly the statute is broad enough to authorize one codefendant to institute an equitable counterclaim against another codefendant. The counterclaim need not be of the same character as the original demand, but may be legal, equitable .or both, nor need the counterclaim arise

out of the same transaction as the plaintiff's demand; and, in fact, a counterclaim may be filed without regard to the effect it may have upon the plaintiff's demand. (*People ex rel. Bradford Supply Co. v. Circuit Court of Pulaski County* (1946), 393 Ill. 520, 66 N.E.2d 420.) It has been specifically held by our courts · that one codefendant may seek indemnity from another codefendant by way of a counterclaim. *Embree v. DeKalb Forge Co.* (1964), 49 Ill.App.2d 85, 199 N.E.2d 250.

■■ In the instant case the beneficiaries were merely seeking indemnity from their codefendants on the basis of a lease provision, and, in order to do so, they had to jump the equitable hurdle of reformation. This being the case, we hold that the court below had proper jurisdiction over the subject matter of Count I.

■■ Next Desideri claimed that the beneficiaries were guilty of laches in not seeking reformation at an earlier date, because, as a result, he had substantially changed his position in reliance thereon, in defending and settling in the initial lawsuit. It is an inherent element of laches, not only that a considerable period of time elapse and that the one charging laches has been prejudiced thereby, but that the party sought to be charged therefor have knowledge of facts. (*Anderson v. Pettigrew Foundry Co.* (1938), 297 Ill.App. 14, 17 N.E.2d 60.) Laches is an affirmative defense and, as such, its elements must be pleaded by the party claiming it and they must be supported by facts. There is no allegation in the petition, nor does the record hint, as to when the beneficiaries learned of the mistake. In fact, the only time-indicator available is the letter from Desideri's attorneys, dated 13 November 1967, after the expiration of the lease and the institution of the suit by the Hardens, acknowledging his liability to the beneficiaries under the indemnity provision in the lease. At that late date, even Desideri himself thought that the lease as executed reflected the alleged basic agreement between the parties.

Nor is the record any clearer as to any prejudice suffered by Desideri because of the delay in seeking reformation. It is difficult to understand Desideri's allegation that he relied on the beneficiaries' inaction in setting the principal lawsuit, since it appears, from the beneficiaries' amended counterclaim and its supporting documents, that Desideri did not participate in the settlement. Considering the allegations in the petition to strike, together with the record presented to us, we conclude that the defense of laches would not be appropriate in this case.

Finally, Desideri alleged:

"That the Counter-Plaintiffs are estopped from filing an action to reform an instrument because they have ratified said instrument as shown by their filing of an initial Counterclaim against Louis Desideri based upon the same instrument they are now

"seeking to reform. Said Counterclaim was dismissed by this Court after a full hearing on November 12, 1971."

Since the initial counterclaim was not made a part of the record in this appeal and the order by the trial court on 12 November 1972 was silent as to the reasons for the dismissal, we are unable to consider this point on appeal.

We conclude that the beneficiaries sufficiently stated a cause of action for reformation in Count I of their amended complaint, and that the trial court erred in sustaining Desideri's petition to strike.

### As to Count II

In Count II of the amended counterclaim, the beneficiaries seek indemnity on the basis of a "qualitative distinction" between their conduct and that of Desideri's. They contend that Desideri's conduct was "active" in serving liquor to Amos Bain, whereas their conduct in owning the building in which the liquor was served was merely "passive". This, of course, is the theory of implied indemnity based on "active-passive negligence."

Even if the beneficiaries were to be allowed to seek indemnity on this theory (as to which, see the next paragraph), we do not consider their conduct "passive" within the meaning of that theory of implied indemnity. There is no common law liability for either owning the premises in which a dramshop is housed or for operating a dramshop and serving intoxicating liquors therein. *Graham v. General U.S. Grant Post No. 2665, V.F.W.* (1969), 43 Ill.2d. 1, 248 N.E.2d 657. The respective liabilities imposed on the owner of the premises and the operator of the dramshop are therefore based strictly upon statute. (Ill. Rev. Stat. 1967, ch. 43, sec. 135.) Under the statute, *both* the owner of the premises and the seller of intoxicating liquors thereon are jointly and severally liable, and the statute makes no qualitative distinction between the actions of owning and serving. If one's conduct falls within the provisions of the statute, he must be considered an active wrongdoer under that statute, regardless of the comparative passive nature of that conduct relative to the conduct of another statutory obligor. In the present case, both Desideri's selling of intoxicating liquors and beneficiaries' owning and leasing the premises in which the liquor was sold fall within the provisions of the statute, making them both statutory tortfeasors and, as such, both active wrongdoers.

In addition, our Supreme Court has recently expressed reluctance to apply this "active-passive" theory of implied indemnity in Dram Shop cases. Theretofore, the theory had been applied by the appellate courts in the First and Fourth Districts of our State to allow a dramshop

operator to seek indemnity from the intoxicated person for damages paid by such operator resulting from the willful, deliberate, and malicious acts of the intoxicated person. (*Walker v. Service Liquor Store, Inc.* (1970), 120 Ill.App.2d 112, 255 N.E.2d 613; *Geocaris v. Bangs* (1968), 91 Ill.App.2d 81, 234 N.E.2d 17.) This application, however, was subsequently overruled by our supreme court in *Wessel v. Carmi Elks Home, Inc.* (1973), 54 Ill.2d 127, 295 N.E.2d 718. The court stated that a dramshop action is sui generis and distinct from a cause of action based on negligence, and that those negligence decisions which have broadened the concept of implied indemnity are distinguishable. While the supreme court did not rule precisely on the question of whether the *owner* of a dramshop premises could seek implied indemnity from the dramshop *operator*, it did express its hesitancy to allow implied indemnity in this area based on "active-passive negligence."

The trial court was correct in its dismissal of this count of the amended counterclaim.

*Reversed and remanded as to Count I; affirmed as to Count II.*

STAMOS and LEIGHTON, JJ., concur.