(No. 26302.—

Mary E. Harley, Appellant, *vs.* The Magnolia Petro-
leum Company *et al.* Appellees.

*Opinion filed Sept. 17, 1941—Rehearing denied November 18, 1941.*

20

CALVERT & BROCKMAN, and A. J. McMAHAN, (CHARLES J. SCOFIELD, and SCOFIELD, BELL & BELL, of counsel,) for appellant.

CRAIG & CRAIG, for appellee The Magnolia Petroleum Company; GEORGE W. CUNNINGHAM, and JOHN C. QUILTY, for appellee The Shell Oil Company; WILLIAM A. MILLER, and ALFRED S. PFAFF, for other appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed a complaint in the circuit court of Marion county against the Magnolia Petroleum Company, a corporation, (hereinafter referred to as the Magnolia Co.) and others, appellees here, seeking an accounting for royalties due under an oil and gas lease executed by the Magnolia Company's assignor. The defendants, the Shell Oil Company, Inc., and certain other grantees and their successors in deeds executed by the appellant, filed counterclaims by which they sought reformation of their deeds. On hearing, the chancellor dismissed the complaint of appellant and granted the relief prayed under the counterclaims reforming the deeds.

There is little dispute as to the facts. Most of them are covered by stipulation. The principal facts are that appellant owned two tracts of land in Marion county, one of 20 acres and the other of 70 acres. On August 14, 1936, she executed an oil and gas lease covering both tracts to one Haralson, who assigned the same to the Magnolia Co. This was the usual oil and gas lease permitting exploration for oil and gas, and as a consideration she was to receive, in addition to the cash amount then paid, one-eighth of the oil and gas produced. It contained a *pro rata* provision for the payment of royalties as follows: "If the leased premises are now or shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease, and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage." This lease and its assignment were filed for record.

On January 4, 1938, appellant executed a mineral deed to the defendant the Shell Oil Company by which she conveyed to it "an undivided one-half interest in and to all

of the oil and gas in and under, and that may be produced" from the 20-acre strip. The deed was made subject to the following provisions: "This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed; it being understood and agreed that the said grantee shall have, receive, and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties, and other benefits which may accrue under the terms of said lease in so far as it covers the above described land from and after the date hereof, precisely as if the grantee herein had been at the date of the making of said lease the owner of similar undivided interest in and to the lands described and grantee one of the lessors therein." This deed was recorded.

On July 14, thereafter, she executed a like mineral deed to one F. A. Dietrich, a defendant herein, conveying to him an undivided one-fourth interest to the oil and gas in the 20-acre strip, which deed was also subject to the lease in the language hereinabove quoted from the Shell deed. This deed was filed of record. Certain interests in this deed were assigned by Dietrich, so that other defendants were interested in the one-fourth deeded to Dietrich.

On July 15, 1938, appellant executed a third mineral deed to F. A. Calvert, Jr., also a defendant herein. In this deed she conveyed an undivided one-fourth interest in the oil and gas under all of the lands described in the oil and gas lease, which covered both tracts. As the Calvert interests and those of the plaintiff are not antagonistic in this suit, no further attention need be given to that transaction. This deed likewise was recorded.

Thereafter, the lessee, the Magnolia Co., entered upon the 20 acres and explored for oil and gas, and on October 5, 1938, brought in a well producing oil in paying quantities. Four other wells were drilled on the 20 acres. As of April 1, 1939, 162,701.69 gross barrels of oil of the gross value

of $187,539.28 had been recovered from those wells. The one-eighth royalty payable on that production, amounting to $23,442.40, was, in part, paid by the Magnolia Co. to various royalty claimants. The balance it held when this suit was filed. The Magnolia Co., as a defendant, answered admitting that the royalties were due but that it is, because of the dispute, unable to determine to whom they should be paid; that it was, in effect, a stakeholder, and asked that the court determine to whom the royalties should be paid.

Appellant claims that under the lease she was entitled to seven-twelfths of one-eighth of the oil as royalty and that the remainder is to be divided among her grantees. This claim is based on the fact that she owned, subject to the lease, all the mineral rights in the 90 acres except those conveyed in her mineral deeds, all of which latter rights were subject to the oil and gas lease containing the *pro rata* provision hereinbefore referred to. The counter-claims are based on mutual mistake and seek reformation of the mineral deeds.

The appellees, counter-claimants, admit by their pleadings the validity of the oil and gas lease given by appellant to the Magnolia Co., including the terms set forth in the *pro rata* provision hereinbefore referred to, but pray that the deeds issued to them be reformed by striking out the language thereof, hereinbefore recited, making each deed subject to the *pro rata* provision of the lease, and inserting in lieu thereof the following: "It being understood and agreed that the said grantee shall have, receive and enjoy the undivided one-half interest in and to all bonuses, rents and royalties which may be payable by the lessee under the terms of said lease, from all the oil produced from the above described land."

It appears that no wells have been drilled on the 70-acre tract included in the Magnolia Co. lease. The amended counter-claim of appellee the Shell Oil Company alleged that neither the grantor, Mary E. Harley, nor the grantee,

knew of the existence in the lease of the *pro rata* clause and that neither of the parties believed there was any provision which would in anywise connect the ownership of the royalty payable under the terms of the lease, produced in the 20-acre tract, with ownership of the 70-acre tract, and that there was, therefore, a mutual mistake of fact; that both considered that the grantor was conveying to the grantee in that deed one-half of all the royalty payable from all the oil produced in the 20-acre tract.

Dietrich and his assignees filed a like counter-claim seeking reformation of his deed in like manner. The counter-claims were answered by the plaintiff setting out that the deeds taken by the counter-claimants were submitted by them and that they had notice of the existence of the lease with its *pro rata* clause, and that the deeds were made subject to the lease to the Magnolia Co. under its terms. Plaintiff alleges, also, that at the time of the execution of the mineral deed to the Shell Oil Company both she and the agent for the oil company were ignorant of the terms of the oil and gas lease and were conscious of their ignorance, yet the deed was voluntarily executed and later paid for; that there was no mutual mistake, and could not have been, since she was bound by the lease and all the parties were charged with constructive notice of its terms and provisions, and that, if there had been such a mistake, it could only have precluded the meeting of the minds, which, though it might entitle defendants to cancellation, does not entitle them to a reformation of the mineral deeds.

At the time of the trial the appellant was a widow eighty-nine years of age and in her answer to the counter-claim of the Shell Oil Company she alleged that she was then eighty-six, confined most of the time to her home, physically unable to make investigations which would have disclosed all the details of the lease, and that she was inexperienced in such matters, but that the counter-claimant was a corporation engaged in the oil business and employed

experienced attorneys. It is also alleged as an affirmative answer that if the counter-claimant was mistaken or ignorant of the *pro rata* clause, such mistake or ignorance was due to its own negligence.

The answer to the counter-claim of Dietrich and his assigns alleged facts similar to those alleged in answering the Shell Oil Company counter-claim, and also charged *laches* in that Dietrich was notified, following the receipt of his deed from the plaintiff and before oil was found, that the oil and gas lease of Magnolia Co. not only covered the 20 acres but also the 70-acre tract, and contained a *pro rata* royalty clause. The counter-claimants Dietrich and his assigns made no reply to this answer.

The stipulation filed in this case contains the following language: "Said lease, [The Magnolia Co. lease,] is a valid and subsisting oil and gas lease and the rights of all parties to this cause and all parties claiming through or under them are subject to the terms of said oil and gas lease."

It appears from the record that the Magnolia Co. paid royalties in accordance with the claims of appellees until advised by counsel for the plaintiff that she was claiming under the *pro rata* clause. The Magnolia Co. thereupon sent out a letter to all of the parties interested in the 90 acres stating that the *pro rata* provision of the oil and gas lease had been overlooked in preparing the division order and that effective January 1, following, it would withhold payments to all royalty owners pending receipt of revised title opinion by its attorneys, and that it might thereafter be necessary to circulate a new division order. Some months later a new division order in accordance with the claims of the plaintiff was prepared by and circulated by the Magnolia Co. Appellees thereafter sought to secure from plaintiff waivers of any claim to royalties under the lease, so far as wells on the 20 acres were concerned. She refused to sign such waivers.

Plaintiff was called by counter-claimants for cross-examination. She testified that she had received from the Shell Oil Company $250 for 10 acres of royalty; that at the time she made the deed she did not know of the *pro rata* clause in the Magnolia lease, but she knew she was bound by the lease and could not make a deed contrary to its provisions. In substance, her testimony was that she thought she was selling one-half the royalties under the 20 acres but knew at the time of the trial she was not; that she intended to make the conveyance subject to the lease and that she did not discuss the terms of the lease with Kasserman or Dietrich who secured the deeds.

Kasserman testified that at the time the Shell Oil Company deed was made he had not seen the lease and did not know it covered both tracts and contained a *pro rata* clause; that the deed was put in escrow until title was approved by the Shell Oil Company; that had he known of the *pro rata* clause in the lease he would probably have taken the same deed; that he knew the land was leased before he went to see plaintiff and was conscious of the fact that he did not know the terms of it.

Dietrich testified, in substance, that he purchased one-fourth of the royalty under the 20 acres; that at the time of the purchase he knew the deed was subject to the lease but nothing was said about its being so subject and that he filled in the blanks in the deed which he brought and she signed and acknowledged it. He admitted that after he had received the deed two men talked with him about the *pro rata* provision of the lease but he was not enough interested to pay any attention. He testified that had he known of the *pro rata* provisions of the lease he would not have known how to correct the deed, and that the terms of the lease were not considered, and that had he known and understood the *pro rata* provisions of the lease he would not have taken the deed.

Thus the testimony of plaintiff and those who dealt with her in the execution of the deeds, shows that all under-

stood that the deeds were being made subject to the lease. It is claimed by appellees, however, that the intention of the parties was to convey the undivided interest specified, in all the gas and oil that came from the 20-acre tract, without regard to the *pro rata* provision of the lease. It appears that attorneys for the appellee Shell Oil Company procured a certified copy of this lease before the deed from plaintiff was accepted and paid for. There is no doubt that the grantee in each deed had not only constructive notice from the recording of the lease, but, by reason of the provisions of the deed prepared by them, acknowledged the existence of and binding effect of it.

Plaintiff's assignments of error present one issue: Does this record justify the reformation of the mineral deeds? The rule governing the reformation of deeds is that equity will provide such remedy on the ground of mutual mistake where the mistake is one of fact and not of law, and where the proof clearly and convincingly shows that a mistake was made, and that it was mutual and common to both parties. (*Pearce* v. *Osterman,* 343 Ill. 175; *Skelly* v. *Ersch,* 305 id. 126.) Where contracting parties have reduced an agreement to writing it is presumed that the writing expresses their mutual intention, and this presumption does not yield to any other conclusion unless the evidence as to a mistake is of a strong and convincing character. *Pearce* v. *Osterman, supra; Christ* v. *Rake,* 287 Ill. 619.

Counsel agree that a mutual mistake is prerequisite to the right to reform the deeds involved here, and that the record must show affirmatively that both parties understood alike the agreement that they made and that the instrument as executed failed to express their common understanding and intention. (*Schaefer* v. *Henze,* 337 Ill. 41.) Where parties to an agreement are ignorant of facts which, if known, would have caused a different contract, the remedy is rescission and not reformation. (*Hoops* v. *Fitzgerald,* 204 Ill. 325.) The query in such a case is: Did the instrument, when executed, represent the actual contract of the

parties? (*Jacobs* v. *Wilkerson,* 373 Ill. 545.) In this case the grantor and the grantees in the mineral deeds knew of the existing lease and contracted subject to it; all were then conscious that they were ignorant of its terms, including the *pro rata* provisions.

Mistakes are generally divided into two groups, first, those fundamental in character, relating to an essential element of the contract which prevent a meeting of the minds of the parties and so no agreement is made. These generally have to do with such matters as the existence and identity of the subject matter, errors as to price, quantity, and the like. In the other class of mistakes an actual good-faith understanding is reached but through some error, not expressed, the agreement reduced to writing is not the actual agreement. The former of these classes constitutes ground for rescission but not reformation, while the latter may be reformed. An action to reform a written agreement rests upon a theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake of one side and fraud on the other, some provision agreed upon was omitted, and the action is to so change the instrument as written as to conform it to the contract agreed upon, by inserting the provisions omitted or striking out the one inserted by mutual mistake. Equity cannot make a new agreement for the parties under the color of reforming the one made by them, or add a provision which they never agreed upon. Where a writing expresses an actual agreement it cannot be reformed by inserting provisions not agreed upon. These principles have been recognized in *Hoops* v. *Fitzgerald, supra, Broadwell* v. *Broadwell,* 1 Gilm. 599, Elliott on Contracts, sec. 101, 5 Williston on Contracts, 4341, *Curtis* v. *Albee,* 60 N. E. (N. Y.) 600. In *Farmer's Loan and Trust Co.* v. *Suydam,* 69 Neb. 407, 95 N. W. 867, ignorance of facts was held not to be ground for reformation but for rescission. The court there observed: "The difficulty in decreeing a refor-

mation in this case consists in the fact that the minds of the parties do not seem to have ever met upon the contract in the form it is sought to be put." That observation is pointedly applicable to the facts in this case. It can scarcely be said that the deeds were made with intention to make them other than subject to the lease. They recite they are so subject, and, as sought to be reformed, they would not be subject to the lease in an important particular.

Appellees say that they purchased an undivided portion of the royalties appellant was to get under the terms of the lease of all oil produced from the 20 acres they purchased. The lease, however, to which the deeds were made subject, requires the lessee to make distribution of one-eighth of the oil produced from any and all wells drilled on the 90 acres described in the lease, in proportion that the acreage owned by each separate owner bears to the entire leased acreage regardless of the location of the wells. It is apparent that notwithstanding the deeds be so reformed as to show a transfer by the appellant of all her interest in any oil which might be produced in the 20-acre tract, the lessee, unless the terms of the lease were altered, would still be bound to make distribution in accordance with the terms of the lease, which, appellees have stipulated, is a valid and subsisting lease.

Plaintiff testified that she knew she was making deeds subject to the lease and that she would not make them otherwise and did not think she had authority to make them otherwise. What is sought by reformation here is a recitation in the deeds to the effect that they are not subject to the *pro rata* provisions of the lease, whereas the evidence does not indicate that the intention to make them other than subject to the lease was mutual. In fact, no evidence of such an intention at the time of the making of the deeds appears on the part of either party thereto. Both admit that they did not know that the lease contained the *pro rata* provisions. The recognized rule, as stated in 12 Amer-

ican Jurisprudence on Contracts, par. 132, is that where the parties to an agreement enter into it in the face of their conscious present want of knowledge of facts, which they all thus manifestly conclude would not influence their action or induce them to refrain from entering into the agreement, whatever the facts might be, there is not such mistake of fact as to constitute ground for reformation of the agreement. In such a case the parties demonstrate that the existence or non-existence of such facts is of no consequence to them. To constitute a mistake which will be relieved against, the mutual ignorance of facts must be unconscious. In 2 Pomeroy's Equity Jurisprudence, par. 839, the rule is set out that a mistake of fact, against which equity will grant relief, is "an unconscious ignorance or forgetfulness of a fact, past or present, and material to the contract." It was held in *Kowalke* v. *Milwaukee Electric Railway and Light Co.* 103 Wis. 472, 74 Am. St. Rep. 887, that "the ignorance must be unconscious, that is, not a mental state, or conscious want of knowledge whether a fact, which may or may not exist, does so."

Here the parties to the deeds testified that they were conscious at the time the deeds were made that they were ignorant of the terms of the lease, yet the intention of the parties to the deeds was that they were to be subject to the lease. To so change the deeds as to make them not subject, not only would be to change the lease which neither could do, but would be contrary to their agreed and admitted intention. There is nothing in the deeds tending to show that the parties expected to change the application of the lease. The grantor could not do so and she testified she did not so intend.

The evidence in this case is that the Shell Oil Company, though its representative testified that he did not know about the provisions of the lease, yet admitted that its attorneys had a certified copy of the lease and examined it before the deed was accepted. This appellee can scarcely be said to have had no notice of the existence of the *pro*

*rata* provisions of the lease. Dietrich admitted that a short time after he received his deed and before oil was found on the 20-acre tract, he had been told of the *pro rata* provisions of the lease and that it covered both tracts, and he admitted that he then deemed it of no importance.

These grantees knew that they were taking their deeds "subject to" the provisions of the lease as recited in the deeds which were prepared and presented by them. The words "subject to" are words of qualification of the estate granted. (*Consolidated Coal Co.* v. *Peers,* 166 Ill. 361; *Leonard* v. *Caruthers,* 236 S. W. (Tex.) 189; *Percival* v. *Williams,* 74 Atl. (Vt.) 331.) We are of the opinion that the evidence in this case does not show, with required clarity, such mutual mistake as would justify reformation of the deeds.

Appellees argue that even though the lessee, the Magnolia Co., cannot be bound by the reformation of the deeds, yet such deeds, if reformed, would constitute an equitable assignment of the interest of the plaintiff in all the royalties coming off the 20 acres, and that, as such, the decree should be affirmed. This argument is based upon and presupposes a proper case for reformation of the deeds. As we are of the opinion, as stated, that the record does not justify such conclusion, it is unnecessary to consider such contention further.

The circuit court erred in dismissing appellant's complaint and in granting the relief prayed in the counter-complaints. The decree is reversed and the cause is remanded, with directions to dismiss the counter-claims of the appellees the Shell Oil Company, Inc. and Dietrich and his assignees, to grant the prayer of appellant's complaint, to direct the Magnolia Petroleum Co. to make distribution hereafter in compliance with the terms of the lease, and order that it be allowed to reimburse itself for any over-payments out of future production, as set out in its counter-claim.

*Reversed and remanded, with directions.*