ESTELLE F. FRIEDMAN *et al.*, Plaintiffs-Appellants, *v.* DEVELOPMENT MANAGEMENT GROUP, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 79-828

Opinion filed March 28, 1980.

Richard F. Friedman, of Chicago, for appellants.

Robert E. Pfaff, of Chicago (Jenner & Block, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs brought this action to reform a contract to convey a condominium apartment owned by defendants. Pursuant to defendants' motion, the complaint was stricken, the action dismissed and judgment entered for defendants. On appeal, plaintiffs contend that: (1) they had an option agreement to purchase the condominium at a price lower than the one contained in the final sales contract; (2) mutual mistake as to the effect of the alleged option agreement warrants reformation of the sales contract; and (3) their remedy at law is inadequate. We affirm. The following facts were contained in plaintiffs' complaint and will be taken as true for purposes of this appeal.

The named plaintiffs, Estelle F. Friedman and Bernard S. Friedman, had signed a contract to purchase an apartment at the Newport Condominiums in Chicago. The property on which the condominiums were situated was owned by La Salle National Bank (La Salle) as trustee under a trust agreement which named the defendant partnership, Beach Partners, Ltd. (Beach Partners), as beneficiary. Defendant Development Management Group, Inc. (Development Management), is the agent of Beach Partners. In July 1978, Development Management and Beach Partners began developing the apartment building as condominiums, after La Salle had purchased, or agreed to purchase, the property. Condominium units were first offered to current tenants, and magazine and newspaper advertisements announced that the remaining units would be sold to the general public.

In reponse to the advertising, Estelle Friedman visited the condominium sales office on July 24, 1978, where she paid defendants $300 and received a property report which contained a description of the property and information on sales prices and tax assessments. Defendants' agent gave Mrs. Friedman a handwritten receipt, acknowledging receipt of the $300 "as reservation for 2 BR, North Tower, 5 to 16th fl., S.E.

exposure." The price lists contained a notation which read: "Tenant price effective on contracts executed on or before September 1, 1978. Public price subject to change without notice."

On August 22, 1978, defendants sent the Friedmans a letter informing them that they would receive a mailgram from defendants which would let them know the date on which their priority reservation period and seven-day price guarantee would begin. Defendants sent another letter on August 29, 1978, telling the Friedmans of delays, but saying: "All of the conditions previously expressed are still in effect * * * ." The promised mailgram was sent September 14, 1978, notifying the Friedmans that they could enter into a contract to purchase a condominium at any time after 10 a.m. Sunday, September 17, 1978, with price protection to last for seven days from that date.

On September 17, 1978, the Friedmans signed a contract offering to purchase unit 1616N for $65,200. The contract was accepted by defendants on October 11, 1978. The price contained in the contract had been quoted to the Friedmans on September 17 by one of defendants' agents and included $60,700 for the apartment itself and $4500 for a garage right. The property report given to the Friedmans on July 24, 1978, listed unit 1616N at $52,200 for the apartment and $3500 for the garage right. Plaintiffs had received no notice before September 17, 1978, that the prices for the apartments would not be as stated in the property report they had received.

In their complaint filed on November 22, 1978, the Friedmans allege that the contract to convey the apartment for $65,200 was entered under mutual mistake concerning whether the receipt of July 24, 1978, and its confirming documents and letters were binding on the parties. Alternatively, they claim that they were coerced into signing the contract by defendants' repeated urgings that few apartments remained to be sold and that the apartments were subject to sale to others while plaintiffs decided whether or not to buy. The Friedmans seek the reformation of the contract, setting the price at $55,700. In a second count, the Friedmans ask that the case be allowed to proceed as a class action and that contracts of the other members of the class be similarly reformed. Plaintiffs also filed a motion for a temporary restraining order on December 13, 1978, to prevent the closing of the sales of any condominium units to plaintiff class members pending final resolution of the Friedmans' claim.

Defendants subsequently filed a motion to strike and dismiss the complaint on the grounds that no mistake of fact was alleged, no facts were pleaded to show the parties had entered into a binding option agreement and plaintiffs had not pleaded an inadequate remedy at law.

On February 6, 1979, defendants' motion was granted and plaintiffs were given leave to file an amended complaint within 21 days. On

March 6, 1979, plaintiffs having failed to file an amended complaint, the cause was dismissed with prejudice and judgment for defendants' costs was entered against plaintiffs. Plaintiffs appeal from the final order.

OPINION

■■ Plaintiffs contend that they are entitled to reformation of the sales contract in order to set the purchase price for the condominium at $55,700 rather than the $65,200 shown in the contract. The basis of an action to reform a contract is that the parties had reached an agreement but, in reducing it to writing, some provision agreed upon was omitted or one that was not agreed upon was inserted, either through mutual mistake or through mistake on the part of one party and fraud on the part of the other. Reformation will change the contract so that it properly reflects the agreement originally reached by the parties. (*Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 37 N.E.2d 760.) For reformation to be available as a remedy, both the mistake and an actual agreement other than that expressed in the writing must be shown. (*Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 378 N.E.2d 243.) Plaintiffs have alleged that the written sales contract was executed under a mutual mistake concerning the effect of the receipt and property report which defendants gave to Mrs. Friedman upon receiving her payment of $300 on July 24, 1978. According to plaintiffs, the receipt and property report constituted a binding option agreement which set the price of the condominium at $55,700. Consequently, they maintain, the parties were mutually mistaken when the final written sales contract was drawn to reflect the $65,200 sales price. We disagree.

■■■ An option is actually a contract and must therefore contain all the attributes of a contract. (*Whitelaw v. Brady* (1954), 3 Ill. 2d 583, 589, 121 N.E.2d 785, 789.) If the receipt and property report do form an agreement for the purchase of unit 1616N at $55,700, the property must be described with sufficient certainty to enable it to be specifically enforced. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 145 N.E.2d 644; *Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53.) The documents reflect no such specificity. The receipt merely acknowledges that $300 had been paid "as reservation for 2 BR, North Tower, 5 to 16th fl., S.E. exposure." There were 12 units meeting the description in the receipt and it is not clear from the receipt whether plaintiffs had reserved all twelve units, or only one. If they had reserved a single unit, the receipt does not specify the one for which they had deposited the $300.

■■ The price of the unit is also in doubt. Although plaintiffs maintain that they were to pay the price shown in the property report, the receipt contains no reference to the property report at all and the report was not otherwise attached to the receipt. Plaintiffs concede the necessity of the

property report to their position, but rely solely on the simultaneous delivery of the receipt and the report to support their claim. Simultaneous delivery is not sufficient of itself to make a document part of a contract, for some relationship between the writings must be shown, either by reference to the other writings or some other indication of an intention to incorporate the document. (See *Pinson v. Allstate Insurance Co.* (1979), 68 Ill. App. 3d 788, 386 N.E.2d 638; Williston, Contracts §628 (3d ed. 1961).) There is no indication that the prices in the property report were intended to be part of the agreement. The first page of the report, as well as each subsequent page containing a price list, contains a clear statement that prices to the public are subject to change without notice. Furthermore, subsequent correspondence stated that a price guarantee was to take effect at the time they would become eligible to purchase under defendants' priority reservation plan. We therefore conclude that no specific purchase price had been set by the original receipt or property report. We also note in passing that the property report lists different prices for tenants and for the public. At oral argument, plaintiffs' counsel claimed that plaintiffs belonged to neither category, in which event there could be no determination of any unit price at all until the sales contract was drawn.

■■ Because of the lack of specificity as to subject matter and price, we conclude that the receipt and property report were no more than an agreement to give plaintiffs a priority in making an offer to purchase one of the condominium units, with the exact unit and price to be determined at a later time.

■■ Plaintiffs urge, nevertheless, that the parties were mutually mistaken as to the binding nature of the receipt and property report. Relying on *Barkhausen v. Continental Illinois National Bank & Trust Co.* (1954), 3 Ill. 2d 254, 120 N.E.2d 649, *cert. denied sub nom. Barkhausen v. Edwards* (1954), 348 U.S. 897, 99 L. Ed. 705, 75 S. Ct. 218, they contend that the parties made a mutual mistake of law and cannot be foreclosed from equitable relief. In *Barkhausen*, the court held that the classification of the mistake as one of fact or law is secondary to the equitable principle that no one should be allowed to be enriched unjustly at the expense of another through an innocent mistake by both parties, whether one of law or one of fact. Although plaintiffs are correct in noting that *Barkhausen* has never been overruled, it should also be pointed out that it has been virtually ignored by our supreme court which, in cases after *Barkhausen*, has consistently required a factual mistake as a prerequisite for an action for reformation. (See, *e.g., Wilcox v. Natural Gas Storage Co.* (1962), 24 Ill. 2d 509, 182 N.E.2d 158; *Mahon v. State Farm Mutual Automobile Insurance Co.* (1962), 36 Ill. App. 2d 368, 184 N.E.2d 718.) Mutual mistake of fact "contemplates a mistake of fact at the time the instrument was

drawn, not as to the legal effect of the instrument, but as to the facts of the agreement." (*Jacobs v. Wilkerson* (1940), 373 Ill. 545, 549, 26 N.E.2d 860, 862.) The mistake which plaintiffs claim pertains to the legal effect of the receipt and property report, not to the drawing of the sales contract, and *Barkhausen* thus cannot provide support for the reformation of the sales contract. Even assuming, *arguendo,* that *Barkhausen* controls here, there is no mutuality of mistake, for plaintiffs erroneously believed that the receipt and property report were a binding sales contract while defendants maintained they were not.

It is equally apparent that plaintiffs are not entitled to reformation of the sales contract due to any mistake in drawing the sales contract itself. In *Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 37 N.E.2d 760, the court classified mistakes in two groups, the first being those "fundamental in character, relating to an essential element of the contract which prevent a meeting of the minds of the parties." (378 Ill. 19, 28, 37 N.E.2d 760, 765.) In the second class of mistakes, an actual good faith agreement is reached but, due to error, is not expressed in the written reduction of the agreement. It is the second category which lends itself to reformation. Typical reformations of errors have included the insertion of the name of the correct lessor where the parties had acknowledged their obligations (*Harden v. Desideri* (1974), 20 Ill. App. 3d 590, 315 N.E.2d 235), changing the effective date of a policy where an insurance binder and the subsequent policy contained conflicting effective dates and the conduct of the parties indicated the acceptance of the earlier date found in the binder (*Mahon v. State Farm Mutual Automobile Insurance Co.*) and correcting a numerical figure where the omission of a decimal point resulted in the payment of an annuity which exceeded the face value of an insurance policy. *Metropolitan Life Insurance Co. v. Henriksen* (1955), 6 Ill. App. 2d 127, 126 N.E.2d 736.

■■ The former category includes mistakes as to "the existence and identity of the subject matter, errors as to price, quantity, and the like," constituting grounds for rescission rather than reformation under the principle that equity cannot make a new agreement for the parties under the guise of reforming one made by them. (*Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 28, 37 N.E.2d 760, 765.) The instant sales contract falls into this category. The parties disagree as to a fundamental aspect of the contract, the sales price, and there can be no showing of a meeting of minds under the circumstances. The contract therefore cannot be reformed.

■■ Finally, we note that plaintiffs signed the contract in September 1978, making an offer to purchase from defendants at the higher price. It was admitted at oral argument that plaintiffs fully intended that the contract reflect the higher price, but that they were coerced into making

the offer at the higher price by defendants' urgings that their price guarantee was due to expire and that others might make a firm offer on the apartment before them. However, plaintiffs have emphasized that they do not claim any fraud on the part of defendants, and absent such a claim, we cannot see how plaintiffs were pressured into the contract by anything other than the realities of the market place. Furthermore, plaintiffs' offer was not accepted until nearly a month after it was made and they did not initiate this action until November 22, 1978, more than a month after defendants signed the contract. Moreover, plaintiffs apparently abandoned their attempt to obtain a temporary restraining order to prevent conveyance of title while the action was pending, and by the time the trial court entered its final order the transaction was closed. Consequently, plaintiffs' rights under the contract were merged into the deed. *Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 184, 347 N.E.2d 161, 164.

In essence, plaintiffs have asked that a unilateral mistake as to the legal effect of a first agreement be grounds for the reformation of a later agreement which reflected their intentions at the time it was drawn. To grant plaintiffs relief under these circumstances could amount to a declaration that parties to a valid, enforceable contract can avoid a later, enforceable contract, knowingly executed and pertaining to the same subject matter, by claiming a misunderstanding as to the effect of the first transaction. Such a ruling would have disastrous results on contract law as we know it.

For the foregoing reasons, we affirm the order of the circuit court of Cook County dismissing plaintiffs' cause with prejudice and awarding costs to defendants.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.