JUDITH ELLEN JONES, Plaintiff-Appellant, *v.* EAGLE II *et al.*,
Defendants-Appellees.

First District (5th Division)    No. 80-1419

Opinion filed July 31, 1981.

Herbert Beigel, Harvey J. Barnett, and Ira J. Bornstein, all of Chicago (Barnett and Biegel, Ltd., of counsel), for appellant.

Perry J. Snyderman, Jay A. Canel, Theodore A. Shapero, and Diane Fields Geocaris, all of Chicago (Rudnick & Wolfe, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the dismissal of all five counts of plaintiff's class action seeking specific performance, reformation of contracts, injunctive relief, and damages arising from the sale of condominiums following the conversion of Carl Sandburg Village No. 7 (hereafter No. 7) from rental to condominium units. The question presented is whether a cause of action was stated in any of the counts which sounded respectively in a violation of the Chicago Condominium Ordinance (Municipal Code of Chicago 1979, ch. 100.2 (the Ordinance)), in fraud, in a breach of fiduciary obligations, in breach of contract, and in violations of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*).[1]

It appears that plaintiff was a tenant of a one-bedroom apartment in No. 7 who, in March 1979, received along with other tenants a notification by defendants that No. 7 was to be converted into condominiums and that, on April 19, 1979, defendants filed a property report, a copy of which was received by plaintiff on May 21, 1979. Such a notification and a property report were required by the Ordinance. The property report, which contained a narrative describing the conversion and summarizing the features of No. 7, also included various exhibits—one of which was entitled "Initial Price List" and stated a "Resident Price," an "Introductory Public Price," and a "Public Price" for each unit. In March 1980, an amendment to the property report containing increases in the resident prices of apartments (including that of plaintiff) and on April 18, 1980, a second amendment were filed showing a decrease in the prices, but they were still higher than those in the Initial Price List. The units in No. 7, however, were not made available for sale until April 20, 1980.

Plaintiff's complaint in all five counts sought a mandatory injunction requiring that defendants offer the apartments for sale at the prices stated in the Initial Price List and a reformation of the contracts for sale already entered into to reflect those prices. The complaint also asserted generally that when the property report was filed on April 19, 1979, defendants did not intend to offer the units in No. 7 for sale until at least one year later; that the units in No. 7 were first made available for sale to residents and tenants on April 20, 1980, at prices substantially higher than those quoted in the original property report; that between April 19, 1979, and April 20, 1980, defendants refused to sell any unit in No. 7 to tenants or residents; and that during that period various tenants of No. 7 renewed their leases.

In count I, it was additionally alleged that defendants violated the

---

[1] The class which plaintiff purported to represent, all other residents and tenants of No. 7, was not certified, and thus the propriety of her representative status is not involved in this appeal.

Ordinance by knowingly filing a property report containing false and misleading disclosures of the prices at which tenants could purchase the units in No. 7, by failing to disclose that the initial prices were subject to change and that the units would not be available to any prospective purchaser at such prices and by knowingly representing said prices as "current" when they were not. The allegations of count I are expressly incorporated by reference into each of the other four counts.

In count II, it was also stated that defendants fraudulently represented to the tenants of No. 7 that they would be able to purchase their units at the prices initially listed; that these representations were made to induce the tenants to renew their leases and to continue paying rent until defendants actually made the units available for sale; and that defendants knew that numerous other persons would, in reliance upon the original property report, take assignments of existing leases and tenancies to avail themselves of the opportunity to purchase units at the initially quoted prices.

In count III, it was alleged that by virtue of their position as developer, "defendants were and are in a fiduciary relationship with the Tenants of No. 7 and therefore owe them duties and obligations of trust, loyalty, and faithfulness" which they breached by making material misrepresentations, failing to disclose material facts, and violating the Ordinance.

Other allegations of count IV stated, in relevant part, that the offer to sell the units in No. 7 to tenants at the prices set forth in the Initial Price List was irrevocable, and that defendants' failure to make these units available to the tenants at such prices was a breach of contract.

In count V, it was also asserted that the misrepresentations, omissions, actions, and course of conduct described in the other counts were violations of the Consumer Fraud and Deceptive Business Practices Act. Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*

Defendants moved to dismiss, asserting in substance that no cause of action was stated in any of the five counts. Briefs were presented by both parties, and after a hearing the motion was sustained and this appeal followed.

OPINION

Plaintiff contends that each of the five counts stated a cause of action and was improperly dismissed. We will consider them separately in the light of the applicable law that in determining the propriety of a dismissal of an action, we are to be concerned only with questions of law presented by the pleadings (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538); that all facts well pleaded as well as reasonable inferences which can be drawn from those facts should be accepted as true

(*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206); that a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which should entitle plaintiff to relief (*Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 286 N.E.2d 25); and that to withstand a motion to dismiss, the complaint must minimumly allege facts sufficiently setting forth the essential elements of the cause of action (*Woodill v. Parke Davis & Co.* (1978), 58 Ill. App. 3d 349, 374 N.E.2d 683, *aff'd* (1980), 79 Ill. 2d 26, 402 N.E.2d 194).

We turn then to the question as to whether a cause of action is stated in count I, which is predicated upon a violation of section 100.2—3 of the Ordinance (Municipal Code of Chicago 1979, ch. 100.2, §100.2—3), providing that:

"No person shall with the intent that a prospective purchaser rely on such act or omission, advertise, sell or *offer for sale* any condominium unit by (a) employing any statement or pictorial representation which is false or (b) omitting any material statement or pictorial representation." (Emphasis added.)

The applicability of this provision depends on whether, as plaintiff contends, the property report filed by defendants was an "offer for sale" as that term is used therein, or whether, as defendant argues, it was a disclosure under the Ordinance concerning condominium units to be offered for sale in the future.

It should be noted at this point that certain disclosure is required by the Ordinance because, as stated in its preamble, "Prospective purchasers of condominium units have often been unable to obtain full disclosure of all information necessary to the decision to purchase." (Municipal Code of Chicago 1979, ch. 100.2.) Section 100.2—2 requires extensive information to be provided (Municipal Code of Chicago 1979, ch. 100.2, §100.2—2) and, while it is acknowledged by plaintiff that a property report containing only information required by the Ordinance would not ordinarily be considered as an offer to sell, she gives three reasons to support her contention that the instant report was such an offer.

The first reason concerns the manner in which prices are set forth. Section 100.2—2(I) provides that the report must contain a "statement of sales prices." (Municipal Code of Chicago 1979, ch. 100.2, §100.2—2(I).) In the information provided under that section in the report, defendants state that "[a] statement of the current sales price of each unsold unit is attached as Exhibit G." A document so marked is entitled "INITIAL PRICE LIST," which contains information about each unit as follows: Resident Price, Introductory Public Price, and Public Price, together with Estimated Monthly Taxes for the Resident, Introductory Public and Public Categories, and Estimated Monthly Assessments. Plaintiff thus

suggests that any reasonable person reading the report "would believe that units were immediately, *currently* available for sale at the price listed in Exhibit G," and she argues that this Initial Price List and the language as to the currency of those prices indicated a present offer to sell. We disagree.

■■ It is basic contract law that a mere price quotation is not an offer (1 A. Corbin, Contracts §26 (1963)), and we believe that the qualification of the word "price" by the adjectives "current" and "initial" merely places a time frame upon the statement, which cannot be considered as an offer to sell. The contrary is indicated from the following facts: (1) the reference in section 100.2—2(I) to current sales prices comes immediately after the following: "All sales are to be made pursuant to the terms and conditions as set forth in the Condominium Purchase Agreement which is attached as Exhibit E to this Property Report"; (2) section 100.2—2(H)(1) provides that "[t]he basic purchase contract form proposed to be used by the developer is attached as Exhibit E to this Property Report"; and (3) section 100.2—2(U) provides for amendment of prices, stating that "[t]he developer shall amend the Property Report from time to time when any material changes occur in any matter contained in such Report."

The second reason has to do with the verbiage used in the information provided regarding the conversion. Plaintiff states:

"Though also not required by the Ordinance, Paragraph C of the Introductory Material, after stating that Sandburg is a conversion condominium, sets forth the definition of conversion found in §100.2—1 of the Ordinance:

'Carl Sandburg Village Condominium No. 7 is "Conversion" Condominium. The terms "Conversion" or "Convert", or like words are defined in Section 100.2—1 of the Code as the *"offering for sale* by a developer or his agent of a condominium unit occupied or rented for any purchase by any person before commencement of a condominium project which includes such unit". The project will be converted to condominium form of ownership upon recordation and registration of the Condominium Instruments with the Recorder of Deeds of Cook County, Illinois and the Registrar of Titles of Cook County, Illinois, as applicable.' (Emphasis added)."

This language, she maintains, also implies a present offer to sell. We think otherwise. It appears to us that while the term "conversion" is defined in section 100.2—1 as an offering for sale of a condominium unit, it is also stated in Paragraph C of the same section that the project will not be converted and available for sale until "recordation and registration," which refers to some time in the future.

The third reason centers not in the wording of the report but in the fact that it was disseminated to plaintiff and other tenants a short time after it was filed which, plaintiff says, is still another indication of a present offer to sell because under section 100.2—5 distribution of the report was not required until there was an offering for sale. We disagree, as it appears to us that this section, while requiring the report to be available for distribution "not later than the offering for sale," also provides in subparagraph (3) that a developer "keep a receipt signed by each purchaser acknowledging that the person entering a contract to purchase has received and has had an opportunity to review the Property Report." It is thus our belief that the purpose of this section was to assure that prospective purchasers receive the report before they enter into a purchase contract.

■■ We see no merit in the argument of plaintiff that the Ordinance definition of "offering" applies to the term "offer" as used in section 100.2—3. It is established that municipal ordinances are to be construed under the rules applicable to statutes (*Village of Park Forest v. Wojciechowski* (1963), 29 Ill. 2d 435, 194 N.E.2d 346); that statutory language must be afforded its plain and ordinary meaning so that the legislature's intendment may be ascertained and given effect (*Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 403 N.E.2d 225); and that, in the absence of a contrary expression, when a statute employs words having a well-known legal significance, courts will assume the legislature intended the words to have that meaning (*Department of Public Works & Buildings v. Wishnevsky* (1972), 51 Ill. 2d 550, 283 N.E.2d 872).

It is clear that the word "offer" has a well-known legal significance. As stated in 12 Ill. L. & Prac. *Contracts* §33 (1955), "An offer, in order to form the basis for a contract, must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." (See also *Calo, Inc. v. AMF Pinspotters, Inc.* (1961), 31 Ill. App. 2d 2, 176 N.E.2d 1.) Under section 100.2—1, an " '[o]ffering' means any inducement, solicitation, advertisement, publication or announcement by a developer to any person or the general public to encourage a person to purchase a condominium unit in a condominium or prospective condominium." Municipal Code of Chicago 1979, ch. 100.2, §100.2—1.

The question raised here bares some relation to that presented in *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, where plaintiff brought a class action, claiming that defendant failed to evaluate his and other applications for admission to defendant's school in accordance with the academic criteria in the school's bulletin, which was distributed to all prospective students. In determining whether a

contract existed between these students and the school, the court in *Steinberg* stated:

> "This situation is similar to that wherein a merchant advertises goods for sale at a fixed price. While the advertisement itself is not an offer to contract, it constitutes an invitation to deal on the terms described in the advertisement. (1 A. Corbin, Contracts sec. 25, comment *b*, illustration 1, and comment *f* (Tent. Draft No. 1, 1964); * * *.)" (69 Ill. 2d 320, 329-30, 371 N.E.2d 634, 639.)

In the instant case, when the language in the definition of "offering", namely, "any inducement, solicitation, advertisement, publication, or announcement * * * to encourage a person to purchase a condominium · unit * * * or prospective condominium" is considered with the other provisions in the report mentioned above, we believe it clear that the report at most could be considered only an invitation for an offer to purchase the units rather than an offer for sale.

■■ While we agree with plaintiff that the report could have more specifically stated that the units were not then being offered for sale and that the prices listed were estimates which were subject to change, we have carefully examined the 50 divisions and subdivisions of section 100.2—2 and the 67 pages of the property report attached to plaintiff's complaint, and it is our view that the trial court was correct in finding that the report did not constitute an offer for sale of the units in question. We conclude, therefore, that section 100.2—3 of the Ordinance upon which count I is predicated is not applicable and that it was properly dismissed.

■■ In determining whether count II states a cause of action in fraud, we note that a misrepresentation in order to constitute a fraud must consist of a statement of material fact, false and known to be false by the party making it, made to induce the other party to act, and, in acting, the other party must rely on the truth of the statement to his or her injury. *Steinberg v. Chicago Medical School*; *Roth v. Roth* (1970), 45 Ill. 2d 19, 256 N.E.2d 838; 19 Ill. L. & Prac. *Fraud* §3 (1956).

Count II alleges in substance that defendants misrepresented in the property report that the units were being offered for sale to the tenants at the prices stated in the Initial Price List and that the misrepresentations were also made to induce plaintiff and other tenants to renew their leases and pay rent until defendants were actually willing to make available for sale the units in No. 7.

■■■ The material statement of fact asserted by plaintiff to have been misrepresented is the alleged offer for sale by defendants of the units at the prices stated in the Initial Price List. We have found above, however, that the property report here could not be considered an offer to sell. Moreover, in alleging fraud, a pleading that omits the essential element of

injury does not state a cause of action. (*3700 S. Kedzie Building Corp. v. Chicago Steel Foundry Co.* (1959), 20 Ill. App. 2d 483, 156 N.E.2d 618; 19 Ill. L. & Prac. *Fraud* §39 (1956); see also *Halla v. Chicago Title & Trust Co.* (1952), 412 Ill. 39, 104 N.E.2d 790.) Here, there is no allegation in count II of any injury to plaintiff or any tenant as a result of those alleged misrepresentations. Furthermore, while plaintiff asserted the possibility of gain to defendants through the renewal of leases, the gravamen of the action is injury to plaintiff, and any benefit to defendants is immaterial. 19 Ill. L. & Prac. *Fraud* §16 (1956); see also *Fairfield Savings & Loan Association v. Kroll* (1969), 106 Ill. App. 2d 296, 246 N.E.2d 327.

In the light thereof, we find that count II does not state a cause of action in fraud and was properly dismissed.

■■ Next we consider whether count III states a cause of action for breach of fiduciary obligations. A fiduciary relationship exists where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith with due regard to the interests of the other (*Wharton v. Meyers* (1939), 371 Ill. 546, 21 N.E.2d 772), and it generally exists in all cases where there is confidence reposed on one side and a resulting superiority and influence on the other (*Works v. McNeil* (1953), 1 Ill. 2d 47, 115 N.E.2d 320).

Count III alleges in pertinent part "[b]y virtue of the defendants' position as developer, pursuant to the [Ordinance] defendants were and are in a fiduciary relationship with the Tenants of No. 7." It is the position of plaintiff that the Ordinance creates a fiduciary relationship between defendants and the tenants which was breached by the misrepresentation in the property report that the units were offered for sale at the prices listed in the report.

■■ We initially note that there could not be such a breach of the alleged fiduciary relationship in view of our conclusion that the property report did not constitute an offer for sale of the units. Furthermore, plaintiff does not refer us to the language of any specific section or sections of the Ordinance indicating a fiduciary relationship. To the contrary, it appears to us that the Ordinance required extensive disclosure which was intended to put the developer and prospective purchasers on as nearly an even footing as was possible. It is our view that the relationship of the developer of a condominium and a tenant in a building to be converted is analogous to that of a vendor and purchaser of realty, concerning which this court has stated "there is no relation of trust and confidence, for they are presumed to deal at arms length." (*Allen v. Borlin* (1949), 336 Ill. App. 460, 466, 84 N.E.2d 575, 578.) Although the Ordinance imposes an obligation upon condominium developers to provide certain information in a property report which must be made available to prospective purchasers, it is our belief that this does not alter the arm's length

relationship between the developer and prospective purchasers. For those reasons, we find that the trial court properly dismissed count III.

Turning then to count IV, we note that for a contract to exist there must be an offer and acceptance. *Zeller v. First National Bank & Trust Co.* (1979), 79 Ill. App. 3d 170, 398 N.E.2d 148; *O'Keefe v. Lee Calan Imports, Inc.* (1970), 128 Ill. App. 2d 410, 262 N.E.2d 758.

Plaintiff essentially alleges in count IV that the property report constituted an irrevocable offer to sell the units to the tenants of No. 7 at the initial prices listed, and that the refusal of defendants to allow plaintiffs to accept the offer or to otherwise make such units available on those terms constituted a breach of contract. However, in view of our finding that the property report was not such an offer, we find that there could be no such breach and it follows that there was no contract. We conclude that count IV was properly dismissed.

We turn then to count V, based upon a violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 262) (the Act), which provides in pertinent part:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

It is essentially alleged in count V that defendants, intending that the tenants would rely thereon, misrepresented the listed prices in the property report as current and failed to disclose either that the units of No. 7 would not be available at those prices; or that the prices were subject to change without notice; or that the units would not be available for one year. We need not decide, however, whether those allegations stated a cause of action under the Act, as there is clearly no basis for the relief requested in count V; namely, that "[a] mandatory injunction for specific performance be issued requiring defendants to offer for sale to all members of the plaintiff class units at the prices stated in the Initial Price List * * *" and that the court "declare a reformation of any contracts previously entered into for sale of the aforesaid units, requiring reformation of the price to reflect the price set forth in the Initial Price List."

Both of these requests in count V are based upon plaintiff's contention that the property report was an offer to sell the units to tenants at the

prices listed in the Initial Price List and that defendants refused to permit the tenants to accept the offer. We have found, however, that the language of the property report could not be considered as an offer to sell.

■■ Furthermore, we note that injunctive relief is not available to the plaintiff here. This court, in *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815, and in *Bonner v. Westbound Records, Inc.* (1977), 49 Ill. App. 3d 543, 364 N.E.2d 570, held that private individuals are precluded from seeking injunctive relief under the Act because under section 7 thereof only the Attorney General is authorized to bring an injunctive action. Ill. Rev. Stat. 1979, ch. 121½, par. 267.

■■ Moreover, concerning plaintiff's request for a reformation of contract, we note that the basis of an action to reform a contract is that the parties have reached an agreement, but, in reducing it to writing, some provision that was not agreed upon was inserted either through mutual mistake or through the mistake on the part of one party and fraud on the part of the other. (*Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 37 N.E.2d 760; *Friedman v. Development Management Group, Inc.* (1980), 82 Ill. App. 3d 949, 403 N.E.2d 610.) Reformation will change the contract so it properly reflects the agreement contemplated by the parties (*Harden v. Desideri* (1974), 20 Ill. App. 3d 590, 315 N.E.2d 235), but for reformation to be available as a remedy, the mistake upon which the suit is based must relate to the contract sought to be reformed (*Friedman*).

In *Friedman*, plaintiffs paid defendants a cash deposit for a condominium unit and received a property report indicating a purchase price of $55,700 for their unit. Two months later, plaintiffs presented a signed contract, offering to purchase the unit for $65,200—the price then requested by defendants, who accepted the contract. Plaintiffs had been given no notice that the price would not be as stated in the property report and, claiming they were coerced into signing the contract "by defendants' repeated urgings that few apartments remained to be sold and that the apartments were subject to sale to others while plaintiffs decided whether or not to buy" (82 Ill. App. 3d 949, 951, 403 N.E.2d 610, 612), they sought reformation of the contract to set the price at $55,700 and to proceed as a class action to similarly reform the contracts of other members of the class. In affirming the dismissal of the complaint, this court after concluding that the receipt and property report were no more than an agreement to give plaintiffs a priority in making an offer to purchase one of the condominium units, with the exact unit and price to be determined at a later time, stated:

> "In essence, plaintiffs have asked that a unilateral mistake as to the legal effect of a first agreement [to give plaintiffs a priority in making an offer to purchase one of the condominium units] be grounds for the reformation of a later agreement which reflected

their intentions at the time it was drawn. To grant plaintiffs relief under these circumstances could amount to a declaration that parties to a valid, enforceable contract can avoid a later, enforceable contract, knowingly executed and pertaining to the same subject matter, by claiming a misunderstanding as to the effect of the first transaction. Such a ruling would have disasterous results on contract law as we know it." 82 Ill. App. 3d 949, 955, 403 N.E.2d 610, 614.

Here, not only is there no initial agreement, but neither in the briefs or in her complaint does plaintiff allege that there was a mistake of any kind with reference to the sales contracts. Specifically, plaintiff does not assert that there was any mistake concerning the purchase prices. She states only that misrepresentations, concealments, and omissions concerning the Initial Price List were "intended to induce the tenants to renew leases and continue to pay rent."

In the light thereof, it appears clear that no cause of action has been stated in count V, and in view of our holding above that the property report could not, under the circumstances here, be considered an offer for sale of the condominium units of No. 7 at the prices stated in the Initial Price List, we conclude that the trial court properly dismissed count V.

For the reasons stated, the order appealed from dismissing plaintiff's action is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.